20-CV-01910 (PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

B.I. INFANT BY FATHER ARTHUR ISKHAKOV,

Plaintiff,

-against-

THE CITY OF NEW YORK, COMMONPOINT QUEENS, STEVEN SAPHIRSTEIN, and CHAZAQ ORGANIZATION USA INC.

Defendants.

# DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**GEORGIA M. PESTANA**
*Corporation Counsel of the City of New York*
Attorney for Defendant City of New York
100 Church Street
New York, New York 10007

Carolyn E. Kruk
Assistant Corporation Counsel
(212) 356-0893
ckruk@law.nyc.gov
Matter No. 2020-020502

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ... iv

PRELIMINARY STATEMENT ... 1

STANDARD OF REVIEW ... 3

a. Federal Rule of Civil Procedure 12(b)(6) ... 3

b. Documents the Court May Consider ... 3

STATEMENT OF FACTS ... 5

a. The Summer Youth Employment Program ... 5

b. The City contracted with Commonpoint, a SYEP Provider. ... 5

c. Defendant Chazaq applied to be a Worksite. ... 6

d. B.I. Applies to the SYEP and Commences Work at Chazaq, And Was Allegedly Sexually Assaulted by Saphirstein, a Chazaq Employee. ... 7

e. Alleged Retaliation by B.I.'s Private High School ... 7

f. Plaintiff's Damages and Requested Relief ... 8

ARGUMENT

POINT I

NO PRIVATE RIGHT OF ACTION EXISTS UNDER THE WORKFORCE INVESTMENT ACT (WIA), NEW YORK STATE EXECUTIVE ORDER (EO) NO. 19, OR SECTION 201-G OF THE NEW YORK LABOR LAW. ... 8

POINT II

PLAINTIFF'S NEW YORK STATE COMMON LAW CLAIMS FAIL. ... 10

**Page**

a. Plaintiff Fails to State a Claim for Assault, Battery, Prima Facie Tort, Sexual Assault, and Unlawful Touching. ....10

b. Plaintiff Fails to State a Claim for Negligent Supervision. ....11

POINT III

PLAINTIFF'S CLAIMS OF SEXUAL HARASSMENT UNDER FEDERAL AND LOCAL LAW FAIL BECAUSE THE CITY WAS NOT B.I.'S EMPLOYER. ....12

a. The City Did Not Control the Manner and Means by Which B.I.'s Work Product Was Accomplished. ....13

b. The City Did Not Control the Skill Required to Participate in the SYEP....15

c. The City Was Not the Source of B.I.'s Instrumentalities and Tools....15

d. The City Did Not Determine the Location of B.I.'s Work....16

e. The City Had No Right to Assign B.I. Additional Projects....16

f. The City's Control Over the Method of Payment to B.I. Does Not Create an Employment Relationship. ....17

g. B.I.'s Work Was Not Part of the City's "Regular Business"....18

POINT IV

PLAINTIFF'S FEDERAL AND LOCAL LAW CLAIMS OF SEXUAL HARASSMENT LIKEWISE FAIL BECAUSE THE SINGLE- AND JOINT-EMPLOYER DOCTRINES DO NOT APPLY. ....19

**Page**

POINT V

PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE OF AN ABSENCE OF ANY CAUSAL CONNECTION BETWEEN B.I.'S REPORT TO THE NYPD, AND HIS EVENTUAL EXPULSION FROM A PRIVATE HIGH SCHOOL. ....................................................22

POINT VI

PLAINTIFF CANNOT ASSERT THIRD-PARTY BENEFICIARY RIGHTS...........................................................................24

CONCLUSION..........................................................................................................................26

**TABLE OF AUTHORITIES**


**<u>Cases</u>** **<u>Pages</u>**

*Abdelhamid v. Altria Group, Inc.*,
515 F. Supp. 2d 384 (S.D.N.Y. 2007)....11

*Arculeo v. On-Site Sales & Mktg.*,
425 F.3d 193 (2d Cir. 2005)....20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3, 14

*Barnum v. Millbrook Care Ltd. Partnership*,
850 F. Supp. 1227 (S.D.N.Y.1994)....3

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....4

*Chau v. Donovan*,
357 F. Supp. 3d 276 (S.D.N.Y. 2019)....11

*Community for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989)....14, 16, 17, 18, 19, 20

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir. 1995)....20

*Ctr. for Discovery, Inc. v. D.P.*,
16-CV-3936, 2018 U.S. Dist. LEXIS 55450
(E.D.N.Y. Mar. 31, 2018)....26

*Doe v. Anonymous Inc.*,
18-cv-10924 (PAC), 2019 U.S. Dist. LEXIS 107886
(S.D.N.Y. June 25, 2019)....13

*Doe v. Uber Techs., Inc.*,
20-CV-8446, 2021 U.S. Dist. LEXIS 140910
(S.D.N.Y. July 28, 2021)....12

*Dorsey v. Fisher*,
468 Fed. Appx. 25 (2d Cir. 2021)....25

*Ehrens v. Lutheran Church*,
385 F.3d 232 (2d Cir. 2004)....12

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000)....14, 19

**Cases** **Pages**

*France v. Touro Coll.*,
14-CV-4613, 2016 U.S. Dist. LEXIS 20006
(E.D.N.Y. Feb. 16, 2016) ....................22

*Gallagher v. AEG Mgmt. Brooklyn LLC*,
16-CV-4779, 2017 U.S. Dist. LEXIS 82173
(E.D.N.Y. May 30, 2017) ....................16

*Gonzalez v. City of New York*,
15-CV-3158, 2015 U.S. Dist. LEXIS 170605
(E.D.N.Y. Dec. 21, 2015) ....................22

*Gorbaty v. Wells Fargo Bank, N.A.*,
10-CV-3291, 2012 U.S. Dist. LEXIS 55284
(E.D.N.Y. Apr. 2012) ....................26

*Gulino v. N.Y. State Educ. Dep't*,
460 F.3d 361 (2d Cir. 2006) ....................13, 14, 21

*Holland v. Goord*,
758 F.3d 215 (2d Cir. 2014) ....................24

*Ki v. City of New York*,
20-CV-4343, 2021 U.S. Dist. LEXIS 203390
(E.D.N.Y. Oct. 21, 2021) ....................12

*Machie v. Nguyen*,
824 F. Supp. 2d 146 (D.D.C. 2011) ....................9

*Martin v. Sprint United Mgmt. Co.*,
273 F. Supp. 3d 404 (S.D.N.Y. 2017) ....................18

*Meyenhoffer v. Larsen & Toubro Infotech Ltd.*,
503 F. Supp. 3d 39 (S.D.N.Y. 2020) ....................19

*Murray v. Nazareth*,
20-CV-1471 (Dkt. No. 60) (E.D.N.Y. Aug. 25, 2021) ....................11

*PHL Variable Ins. Co. v. Town of Oyster Bay*,
16-CV-4013, 2017 U.S. Dist. LEXIS 83262
(E.D.N.Y. May 30, 2017) ....................26

*Poindexter v. EMI Record Group Inc.*,
11-CV-559, 2012 U.S. Dist. LEXIS 42174, 2012 WL 1027639
(S.D.N.Y. March 27, 2012) ....................3

**Cases** **Pages**

*Pottash v. Hello Living, LLC*,
19-CV-4530, 2021 U.S. Dist. LEXIS 21458
(E.D.N.Y. Feb. 2, 2021) ........ 20, 21

*Ross v. Mitsui*,
2 F. Supp. 2d 522 (S.D.N.Y. 1998) ........ 11

*Stack v. Karr-Barth Assocs.*,
18-CV-10371, 2021 U.S. Dist. LEXIS 51169
(S.D.N.Y. Mar. 18, 2021) ........ 19

*Sutton v. Stony Brook Univ.*,
18-CV-7434, 2021 U.S. Dist. LEXIS 156083
(E.D.N.Y. Aug. 18, 2021) ........ 3

*Tightseal Annuity v. Tightseal Constr., Inc.*,
17-CV-3670, 2018 U.S. Dist. LEXIS 138041
(S.D.N.Y. Aug. 14, 2018) ........ 18

*Triola v. ASRC Mgmt. Servs.*,
10-CV-560, 2011 U.S. Dist. LEXIS 142429
(E.D.N.Y. Dec. 12, 2011) ........ 21-22

*Tutora v. Gessner*,
17-CV-9517, 2019 U.S. Dist. LEXIS 51974, 2019 WL 1382812
(S.D.N.Y. Mar. 27, 2019) ........ 25

*United Derrickmen & Riggers Assoc. Local Union No. 197 v. Local No. 1 Bricklayers & Allied Craftsman*,
119 F. Supp. 2d 168 (E.D.N.Y. 2000) ........ 27

*United States v. City of New York*,
359 F.3d 83 (2d Cir. 2004) ........ 13, 14, 15, 18

*Washington v. N.Y. City Madison Ave. Med. P.C.*,
20-CV-3446, 2021 U.S. Dist. LEXIS 167911
(S.D.N.Y. Sept. 3, 2021) ........ 14, 16, 17, 18, 21

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000) ........ 13

**Statutes**

29 U.S.C. § 2938(b)-(c) ........ 9

Fed. R. Civ. Proc. 12 ........ 3

| **Statutes** | **Pages** |
|---|---|


Fed. R. Civ. Proc. 12(b)(6) ........................................ 1, 3

N.Y. Comp. Codes R. & Regs. tit. 9 § 4.19 ........................................ 9

NY Labor Law § 201-g ........................................ 1, 9, 10

## PRELIMINARY STATEMENT

Plaintiff Arthur Iskhakov ("Plaintiff"), on behalf of his minor son, B.I., alleges that Defendant Steven Saphirstein ("Saphirstein"), an employee of Defendant Chazaq Organization USA ("Chazaq"), sexually assaulted B.I. while he was a participant in the City of New York ("City") Department of Youth and Community Development (DYCD)[1] Summer Youth Employment Program (SYEP). Plaintiff brings this suit against Defendant Saphirstein as well as the City, Chazaq, Samuel Field YM & YWHA, a/k/a Commonpoint Queens ("Commonpoint"), who Plaintiff allege were B.I.'s "individual joint employer, co-employer, [and] contractual employer," and "jointly and severally" breached duties owed to him by allegedly allowing the alleged sexual assault to take place. In particular, in his Second Amended Complaint (SAC), Plaintiff alleges that Defendants sexually harassed him in violation of Titles VII and IX of the Civil Rights Act of 1964 (hereinafter, "Title VII" and "Title IX"), New York City Human Rights Law (NYCHRL), and Workforce Investment Act (WIA), New York State Executive Order No. 19, and Section 201-g of the New York Labor Law. Plaintiff further alleges state law assault, battery, negligence, prima facie tort, sexual assault, unlawful touching, and failure to supervise employees. Lastly, Plaintiff alleges that Defendants retaliated against him by virtue of his expulsion from a private high school. The SAC attaches as exhibits and incorporates by reference various documents produced in informal pre-motion discovery, which detail Defendants' respective responsibilities in the administering the SYEP.

Defendant City now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons. First, Plaintiff fails to state a claim against the City for sexual

[1] On October 19, 2021, the Court dismissed the DYCD from the action as an "improper party." *See* Dkt Entry dated October 19, 2021.

harassment under Titles VII and IX and the NYCHRL because (1) the alleged tortfeasor, Saphirstein, was not employed by the City, and (2) the City was not B.I.'s employer. While the City paid B.I. for his work in the SYEP, the case law is clear that remuneration alone is insufficient to give rise to an employment relationship. Instead, Plaintiff was required to—and failed to—plausibly allege, among other things, that the City had "control" over B.I.'s day-to-day work tasks and the "manner and means" by which he completed his assigned tasks.

Second, Plaintiff's common law claims for assault, battery, prima facie tort, sexual assault, unlawful touching, and negligent supervision fail because the City did not employ Saphirstein. Thus, under the doctrine of respondeat superior, Plaintiff cannot state a claim against the City.

Third, Plaintiff's retaliation claim fails because the City played no role in B.I.'s alleged expulsion from Yeshiva, a non-City high school. Plaintiff also fails to allege any causation, or how the alleged expulsion related to B.I.'s report of Saphirstein's sexual harassment to the New York Police Department (NYPD).

Finally, Plaintiff's claim of third-party beneficiary rights fails because he cannot point to any provision or contractual language demonstrating Defendants' intent to confer third-party beneficiary rights upon B.I.. Plaintiff's allegations that "the contracts" contain "benefits of pay, remuneration, work experience and skills" that should be "read as a third-party beneficiary clause" has no basis in law. For these reasons, which are discussed in greater detail below, the Court should dismiss the SAC against the City.

# STANDARD OF REVIEW

**a. Federal Rule of Civil Procedure 12(b)(6)**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sutton v. Stony Brook Univ.*, 18-CV-7434, 2021 U.S. Dist. LEXIS 156083, at *11 (E.D.N.Y. Aug. 18, 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Although the Court must accept all allegations in the complaint as true, this tenet is inapplicable to legal conclusions." *Id.*; *Sutton*, 2021 U.S. Dist. LEXIS 156083, at *11. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Additionally, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, 11-CV-559, 2012 U.S. Dist. LEXIS 42174, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (quoting *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994)).

**b. Documents the Court May Consider**

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Applying these principles, in addition to the allegations in the SAC, the Court may consider the documents attached to the SAC. The first attachment, Exhibit 1, is Chazaq's Worksite Application. Dkt. No. 49-1. The second attachment, Exhibit 2, is Chazaq's "Worksite Pre-Assessment Report 2019". Dkt No. 49-2 pp. 1-3 of 4. The third attachment, Exhibit 3, is Chazaq's "2019 Worksite Assurance and Certification Agreement." Dkt. No. 49-2 p. 4 of 4.

Plaintiff also incorporates by reference documents that the City produced as part of the parties' informal pre-motion discovery. Plaintiff acknowledges such by noting in the opening sentence of his SAC that the allegations are "based upon recently disclosed facts and documents by [] City of New York on [or] about Sept. 2021, and Oct. 2021." ECF p. 1 of 24. The list of documents that the City produced to Plaintiff by email is attached to the Declaration of Carolyn Kruk dated December 3, 2021 (the "Kruk Decl."). *See* Kruk Decl. at **Exhibit A**. These documents include the following:

1. March 11, 2019 contract between the New York City Department of Youth and Community Development (DYCD) and Samuel Field YM & YWWHA (also known as Commonpoint Queens) (hereinafter, **Exhibit B** or the "City-Commonpoint Contract");
2. B.I.'s "Participant Application" for the 2019 SYEP (hereinafter, **Exhibit C** or "Participant Application"); and
3. Chazaq's "Worksite Handbook" (hereinafter, **Exhibit D** or "Worksite Handbook").

These three documents are also attached to the Kruk Declaration as **Exhibits B** through **D**, respectively. The City-Commonpoint Contract and Participant Application are also extensively referred to throughout Plaintiff's SAC. *See* SAC at ¶¶ 9, 9.a, 11, 17.b, 18, 22, 22.a, 12.b and 12.e (p. 10 of 24), 14 (p. 15 of 24), 41, and 42 (referencing the City-Commonpoint Contract); *id*. at ¶¶ 12.aa (p. 9 of 24), 13.a (p. 15 of 24), 14 (p. 15 of 24), and 17 (p. 16 of 24) (referencing the Participant Application).

As these documents were disclosed to Plaintiff as part of informal pre-motion discovery, and he relied upon them in formulating the allegations in the SAC, these documents may properly be considered by the Court to evaluate the City's motion to dismiss. Additionally, and significantly, Plaintiff expressly refers to many of these documents in his SAC.

## STATEMENT OF FACTS

### a. The Summer Youth Employment Program

The DYCD's SYEP is a youth employment program that provides work-based experiences to participants ages 16 to 24 (hereinafter, the "SYEP Participants"). Kruk Decl. at Exh. B (CNY000126-128). Through this program, the SYEP Participants develop social skills, learn work norms and culture, understand career pathways, build professional networks, and practice managing money. *Id*. (CNY000127-128).

SYEP is offered through community-based organizations with whom the City contracts (hereinafter, the "SYEP Providers"). *Id*. (CNY000127)(description of Program Services). SYEP Providers (like Commonpoint in the instant case) can provide the SYEP program services – i.e.., the work experience to SYEP Participants – directly, or through approved subcontractors. *Id*. Exh. B (CNY000127) and Exh. D (CNY000200). The sites where SYEP Participants gain work based experience are called SYEP Worksites (such as Chazaq in the instant case). *Id*. (CNY000127)(definition of Worksite/s)

### b. The City contracted with Commonpoint, a SYEP Provider.

On March 11, 2019, the City contracted with Commonpoint, under which Commonpoint agreed to be an SYEP Provider for a term ending March 10, 2022. *Id.* Exh. B (CNY000008-149). The contract set forth Commonpoint's responsibilities as an SYEP Provider, which included: (i) developing work-based experiences under which SYEP Participants perform work (CNY000128); (ii) engaging in participant outreach and recruitment (CNY000128); (iii) assisting participants with

applications, designating successful applications, and enrolling participants in the SYEP (CNY000128-129); (iv) contracting with Worksites (CNY000127-134); (v) placing participants at Worksites that best correspond with the participants' needs, goals, and interests (CNY000131); (vi) requiring Worksites to prepare, maintain, verify, and report written timesheets for SYEP Participants (CNY000131); (vii) requiring Worksites to supervise and complete evaluations of SYEP Participants (CNY000131); (viii) providing policies and procedures and in-service orientation to Worksites and ensuring that Worksites maintain appropriate policies and procedures specific to the employment of SYEP Participants (CNY000135); (ix) monitoring Worksites by visiting each Worksite before participants begin work and then at least weekly during the SYEP (CNY000135-136); and (x) assisting with payments to participants by, among other things, entering participants' hours into a Payment Management System, monitoring for evidence of fraudulent timesheets, encouraging participants to enroll in direct deposit, and responding to inquiries regarding earning statements (CNY000136-137). The contract also clearly stated that "nothing" contained in Commonpoint's separate agreement with the Worksite "create[s] any contractual relationship between [the City] and the [Worksite] or Participant." *Id.* Exh. B (CNY000135).

**c. Defendant Chazaq applied to be a Worksite.**

In 2019, Chazaq executed a Worksite Application (*see* Dkt. No. 49-1 at pp. 1-2), and Worksite Assurance and Certification Agreement (*see* Dkt. No. 49-2 at p. 4), which it submitted to Commonpoint. In its Worksite Application, Chazaq requested five SYEP participants, who would be supervised by five supervisors. Dkt. No. 49-1 at p. 2. Chazaq's requested participants would fulfill the role of a "Clerical Aid/Office Assistant" with the following duties: "[a]nswer phones, make copies, file, fax, light typing, some computer use, schedule appointments, sign in

customers/clients." *Id*. at p. 2. In the Worksite Assurance and Certification Agreement, Chazaq agreed to (i) provide supervision to the SYEP Participants; (ii) certify and account for their time and attendance; (iii) comply with all Department of Labor regulations; (iv) perform background screening for Worksite staff; and (v) report Worksite incidents that impact the health, safety, or well-being of SYEP participants to the SYEP Provider, Commonpoint. Dkt. No. 49-2 at p. 4. Thereafter, a representative from Commonpoint visited Chazaq, completed a Worksite Pre-Assessment Report, and approved Chazaq as a Worksite. *Id.* at pp. 1-3.

**d. B.I. Applies to the SYEP and Commences Work at Chazaq, And Was Allegedly Sexually Assaulted by Saphirstein, a Chazaq Employee.**

In June or July 2019, B.I. submitted a SYEP Participant Application and Commonpoint assigned him to work at Chazaq, where Saphirstein was employed. SAC p. 16 ¶¶ 17, 18; *see also* Kruk Decl. at Exhibit C (CNY000218).

On July 9, 2019, Plaintiff alleges that Saphirstein "directed and ordered" B.I. to be seated in Saphirstein's automobile in front of Chazaq. SAC p. 16-17 ¶ 19. Plaintiff alleges that Saphirstein then touched and rubbed B.I.'s shoulder and stomach without his consent. *Id.* p. 17 ¶ 20. Saphirstein then allegedly attempted to touch B.I.'s penis over his clothes and asked B.I. if he could "come in his ass." *Id.* p. 17 ¶¶ 21-23. B.I. alleges he told Saphirstein to "stop touching him" and was "successfully able to push Saphirstein's hand away each time." *Id.* p. 17 ¶¶ 21-22. B.I. later reported the incident to the NYPD. *Id.* p. 17 ¶ 24. As of the date of the initial Complaint, criminal charges were pending against Saphirstein. *Id.* p. 17 ¶ 25.

**e. Alleged Retaliation by B.I.'s Private High School**

Plaintiff alleges that in 2019 or 2020, Saphirstein visited B.I.'s Yeshiva high school as "an approved visitor" in violation of a "NYC Criminal Court order of protection." *Id.* p. 17 ¶¶ 26-27. Plaintiff claims that Saphirstein videotaped, glared at, and intimidated B.I., which upset B.I.. *Id.*

p. 17 ¶ 29. Plaintiff alleges that B.I. was "eventually" expelled from his high school without counseling or therapy. *Id.* p. 18 ¶ 30. Plaintiff alleges the expulsion was without cause and the result of "Defendants, acting in concert, alone and together, jointly and severally, with the Yeshiva high school contacts that led to the original SYEP interview and qualification of [B.I.] with the [City]." *Id.* pp. 18, 20 ¶¶ 31, 40-40(c).

**f. Plaintiff's Damages and Requested Relief**

Plaintiff alleges that, as a result of Defendants' actions, B.I. attended therapy and took medication to treat his physical and mental distress. *Id.* p. 18 ¶ 34. Plaintiff alleges B.I. is permanently injured and disabled, and that his family, work, social, and educational life has been damaged or impaired. *Id.* Plaintiff seeks $5,000,000 in compensatory damages and reimbursement for costs associated with medical treatment and therapy. *Id.* pp. 22-23 ¶¶ 41-45.

## ARGUMENT

## POINT I

### NO PRIVATE RIGHT OF ACTION EXISTS UNDER THE WORKFORCE INVESTMENT ACT, NEW YORK STATE EXECUTIVE ORDER NO. 19, OR SECTION 201-G OF THE NEW YORK LABOR LAW.

Plaintiff's claims under the WIA,[2] EO No. 19, and § 201-g of the New York Labor Law ("LL Section 201-g") should be dismissed because no private right of action exists under them.

Plaintiff points to no section of the WIA that was violated, nor the basis for a private right of action. Indeed, courts have held that no private right of action exists under the WIA. *See, e.g.*, *Machie v. Nguyen*, 824 F. Supp. 2d 146, 151 (D.D.C. 2011)(finding no private right of action to

[2] The WIA of 1998 was replaced by the 2014 Workforce Innovation and Opportunity Act.

enforce the non-discrimination provision of the WIA). Rather, the Secretary of Labor and Attorney General are charged with enforcement of the WIA. 29 U.S.C. § 2938(b)-(c).

Plaintiff's alleged claim under EO No. 19 fails because, as an initial matter, the EO applies to State agencies alone. *See* N.Y. Comp. Codes R. & Regs. tit. 9 § 4.19 (noting that "state agencies" must formulate and issue domestic violence and workplace policies based on sample implementation procedures distributed by the State's Office for the Prevention of Domestic Violence). Even if the EO applied, there is no private right of action under the EO.

Plaintiff's claim under LL Section 201-g likewise fails because there is no private right of action under this provision. Section 201-g provides that employers must adopt a sexual harassment prevention policy and training, and sets out the minimum standards for such. *See* LL Section§ 201-g ("The department shall consult with the division of human rights and produce a model sexual harassment prevention training program to prevent sexual harassment in the workplace."). But even if this provision created a private right of action, Plaintiff fails to allege how the City failed to adopt a sexual harassment prevention policy or training in violation of Section 201-g and instead merely "appends" Section 201-g, which "mandate[es] education and supervision." SAC p. 19 ¶ 37. Indeed, the Worksite Assurance and Certification Agreement, Worksite Handbook, and City-Commonpoint Contract demonstrate the City's compliance with Section 201-g, as Commonpoint was expressly required to provide participants with "sexual harassment prevention training issued by the New York City Commission on Human Rights prior to placement at the Worksite." Kruk Decl. Exh. D (CNY000205); *see also id*. Exh. B (CNY000130)(noting Commonpoint's requirement to provide B.I. with "Work Readiness Training" detailing SYEP's policies and procedures). Chazaq was also required to comply with local and state legislation regulating prevention of sexual harassment in the workplace. *Id*. Exh. D (CNY000205)(noting Chazaq's

requirement to comply with local and state legislation regulating prevention of sexual harassment in the workplace and to allow B.I., as a SYEP Participant, to avail himself of Chazaq's internal sexual harassment prevention policy, which includes the requirement that Chazaq conduct an investigation in good faith in accordance with that policy). Thus, even if Section 201-g created a private right of action, the documents this Court may consider in the instant motion show the City's compliance with Section 201-g. Accordingly, Plaintiff's WIA, EO, and LL Section 201-g claims should be dismissed.

## POINT II

## PLAINTIFF'S NEW YORK STATE COMMON LAW CLAIMS FAIL.

### a. Plaintiff Fails to State a Claim for Assault, Battery, Prima Facie Tort, Sexual Assault, and Unlawful Touching.

Plaintiff's intentional tort claims—for assault, battery, prima facie tort, sexual assault, and unlawful touching—fail because the alleged tortfeasor, Saphirstein, was not a City employee. Under New York law, the doctrine of respondeat superior renders an employer vicariously liable for a tort committed by an employee acting within the scope of his employment. *Ross v. Mitsui*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998). "The key element of respondeat superior, however, is an employment relationship between the alleged tortfeasor and the party that the defendant is seeking to hold vicariously liable." *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007). Here, Plaintiff acknowledges that Saphirstein "is and was an employee of Chazaq." SAC p. 3 ¶ 7. Therefore, Plaintiff's intentional tort claims against the City fail.

Even if Saphirstein was a City employee, which he was not, Plaintiff's intentional tort claims fail because "an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Ross*, 2 F. Supp. 2d at 531. "When it comes to sexual abuse, New York courts repeatedly [hold] that it arises from personal

motives and does not further an employer's business, even when committed within the employment context." *Murray v. Nazareth*, 20-CV-1471 (Dkt. No. 60) (E.D.N.Y. Aug. 25, 2021). *See also Chau v. Donovan*, 357 F. Supp. 3d 276, 291 (S.D.N.Y. 2019) ("[N]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault."). As Saphirstein's alleged misconduct was not done in furtherance of the City's "business," Plaintiff's intentional tort claims against the City should be dismissed.

**b. Plaintiff Fails to State a Claim for Negligent Supervision.**

Plaintiff's claim for negligent supervision fails for the same reasons. To state a claim for negligent supervision, a plaintiff must allege that: (1) the tort-feasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004); In addition, a plaintiff must establish the "standard elements of negligence." *Ki v. City of New York*, 20-CV-4343, 2021 U.S. Dist. LEXIS 203390, at *14 (E.D.N.Y. Oct. 21, 2021). Here, Plaintiff alleges that Saphirstein "is and was an employee of Chazaq," SAC p. 3 ¶ 7, not the City. Thus his negligent supervision claims fails against the City.

Even if Saphirstein and the City were in an employee-employer relationship, which they were not, Plaintiff does not allege that the City—or any defendant—"knew or should have known" of any propensity by Saphirstein to commit sexual assault. *Ki*, 2021 U.S. Dist. LEXIS 203390, at *14-15. In fact, the SAC contains no allegations about Saphirstein's propensities at all, much less about the City's knowledge of such. *Doe v. Uber Techs., Inc.*, 20-CV-8446, 2021 U.S. Dist. LEXIS 140910, at *33 (S.D.N.Y. July 28, 2021) (noting an employer is only liable for negligent supervision if aware of "specific prior acts or allegations" against the employee).

For these reasons, Plaintiff's negligent supervision claim should be dismissed.

## POINT III

**PLAINTIFF'S CLAIMS OF SEXUAL HARASSMENT UNDER FEDERAL AND LOCAL LAW FAIL BECAUSE THE CITY WAS NOT B.I.'S EMPLOYER.**

Plaintiff's claims under Title VII, Title IX, and the NYCHRL fail because the City was not B.I.'s employer. It is well established that "an employer-employee relationship is a primary element" of Title VII claims. *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). The same applies to claims under Title IX and the NYCHRL. *Doe v. Anonymous Inc.*, 18-cv-10924 (PAC), 2019 U.S. Dist. LEXIS 107886 at *6 (S.D.N.Y. June 25, 2019) ("[T]he Second Circuit's test for determining if a plaintiff is an employee under Title VII also applies to … claims under NYCHRL."); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (noting that identical standards apply to claims brought under Title VII and Title IX).

In New York, a two-part test is used to determine whether an individual was an employee. *Gulino*, 460 F.3d at 372; *United States v. City of New York*, 359 F.3d 83, 93 (2d Cir. 2004). First, a plaintiff must prove he received remuneration for working. *Id*. Second, if remuneration exists, courts use a 13-factor common law test to analyze whether an employment relationship exists. *Id*. These factors are:

> [T]he hiring party's right to control the manner and means by which the product is accomplished[;] the skill required; the sources of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 92 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)). The same test applies under the NYCHRL. *Washington v. N.Y. City Madison Ave. Med. P.C.*, 20-CV-3446, 2021 U.S. Dist. LEXIS 167911, at *4 (S.D.N.Y. Sept. 3, 2021).

The 13-factor common law test "focuses largely on the extent to which the alleged master has control over the *day-to-day activities* of the alleged servant." *Gulino*, 460 F.3d at 379 (emphasis added). While no one factor is determinative," *Reid*, 490 U.S. at 472, courts "place the greatest emphasis on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." *United States v. City of New York*, 359 F.3d at 92. Further, in balancing these factors, a court should "disregard those factors that, in light of the facts of a particular case, are (1) irrelevant, or (2) of indeterminate weight . . . " *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000).

Here, B.I. was paid by the City. SAC p. 4 ¶ 11. Plaintiff does not, however, sufficiently or plausibly allege the 13 factors give rise to an employment relationship between B.I. and the City. Instead, Plaintiff recites the 13 factors in a conclusory manner, which is insufficient to withstand a motion to dismiss. *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Washington* 2021 U.S. Dist. LEXIS 167911, at *7 (finding the "threadbare allegations" and "labels and conclusions" insufficient to allege that defendants were plaintiff's employers under Title VII and the NYCHRL).

In any event, the documents upon which Plaintiff incorporates by reference belie any assertion of an employment relationship. As such, the City considers each of the 13 factors—with reference to the documents that this Court may consider in the instant motion—in turn.

**a. The City Did Not Control the Manner and Means by Which B.I.'s Work Product Was Accomplished.**

The first—and most important—factor requires an assessment of "the hiring party's right to control the manner and means by which the product is accomplished." *United States v. City of New York*, 359 F.3d at 92. Here, the SAC alleges in a conclusory manner that "all the Defs. control[led] [sic] the means . . . by which SYEP summer intern program, the educational product experience work was accomplished". SAC p. 12 ¶ 1. Absent elaboration, this allegation alone is insufficient to state a claim. Moreover, the documents available to the Court on this motion confirm that the City did not control any aspect of B.I.'s work product or duties at Chazaq. B.I.'s Worksite Application, Chazaq's Worksite Assurance and Certification Agreement, as well as Chazaq's Worksite Handbook make plain that Chazaq – and not the City – determined B.I.'s job title, duties, and work schedule (Dkt. No. 49-1 p. 2); monitored B.I.'s time and attendance (Dkt. No. 49-2 p. 4); supervised B.I. (*id.* at p. 4); and formally evaluated B.I. during the program (Kruk Decl. at Exh. D (CNY000201). Thus, Chazaq alone had control over B.I.'s duties and work product.

In addition, Commonpoint, as SYEP Provider, was responsible for (i) assessing B.I.'s work-related interests and skills (*id.*); (ii) visiting Chazaq on a weekly basis (*id*. (CNY000203)); and (iii) soliciting B.I.'s feedback on the value and appropriateness of his work assignments (*id*. at Exh. B (CNY000131)).

In contrast, the City-Commonpoint Contract confirms that the City did not have "any contractual relationship" with Chazaq or B.I. *See* Kruk Decl. at Exh. D (CNY000135). Therefore, to the extent anyone other than Chazaq had control over B.I.'s work product or duties at Chazaq, it was Commonpoint—not the City.

For these reasons, and because Plaintiff's sole allegation is that "all the Defs. control[led] [sic] the means … by which SYEP summer intern program, the educational product experience work was accomplished" (SAC p. 12 ¶ 1), Plaintiff fails to allege plausible facts under the first

factor to suggest that the City had any control over B.I.'s daily duties or work product. *Washington*, 2021 U.S. Dist. LEXIS 167911, at *7 (dismissing complaint where plaintiff conclusorily argued the first *Reid* factor was satisfied because the complaint was "entirely devoid of any facts" regarding defendant's control over plaintiff's work); *Gallagher v. AEG Mgmt. Brooklyn LLC*, 16-CV-4779, 2017 U.S. Dist. LEXIS 82173, at *11 (E.D.N.Y. May 30, 2017) (finding plaintiff failed to allege facts suggesting that defendant maintained a level of supervision necessary to control the manner and means of plaintiff's daily duties).

**b. The City Did Not Control the Skill Required to Participate in the SYEP.**

The second factor requires an assessment of the extent to which the hiring party has the right to control the skill required of the prospective employee. *Reid*, 490 U.S. at 751-752; *Gallagher*, 2017 U.S. Dist. LEXIS 82173, at *10. Plaintiff again makes only a single conclusory assertion that the City "controlled the skill required of [B.I.] to be in and participate in the SYEP". SAC p. 12 ¶ 2. The City-Commonpoint Contract confirms, however, that Commonpoint, as SYEP Provider, was required to place B.I. at a Worksite based on Commonpoint's assessment of B.I.'s skills. *See* Kruk Decl. at Exh. B (CNY000127); *see also id*. at Exh. D (CNY000201). In this case, Chazaq requested SYEP Participants who could type, make phone calls, and speak English, Hebrew, and Russian. Dkt. No. 49-1 p. 2. Therefore, Chazaq and Commonpoint—not the City—identified the skills SYEP Participants needed to work at Chazaq under the second factor.

**c. The City Was Not the Source of B.I.'s Instrumentalities and Tools.**

The third factor requires courts to assess the sources of the instrumentalities and tools used by the employee in his or her work. *Reid*, 490 U.S. at 751-752; *Washington*, 2021 U.S. Dist. LEXIS 167911, at *8. Plaintiff's SAC alleges that "[a]ll the Defs . . . controlled the sources of the instrumentalities of clerical and related office administrative work as the tools of the summer youth employment [program]." SAC p. 12 ¶ 3. This assertion is not only conclusory but also contradicted

by Chazaq's Worksite Application and Handbook, which show that Chazaq provided SYEP Participants such as B.I. with the "tools-of-the-trade," such as telephones, copy machines, and computers. *See* Dkt. No. 49-1 p. 2; Kruk Decl. at Exh. D (CNY000201). As such, Plaintiff fails to allege plausible facts suggesting that the City provided B.I. with any instrumentalities or tools used at Chazaq. *Washington*, 2021 U.S. Dist. LEXIS 167911, at *8 (dismissing plaintiff's complaint where it was devoid of allegations that defendants were the "sources of the instrumentalities and tools" plaintiff used in her job).

**d. The City Did Not Determine the Location of B.I.'s Work.**

With respect to the fourth factor, the City played no role in determining the location of B.I.'s work. *Reid*, 490 U.S. at 751-752 (noting that the fourth factor requires as assessment of whether the hiring party had the right to determine the location of work); *Washington*, 2021 U.S. Dist. LEXIS 167911, at *8. While Plaintiff alleges in conclusory fashion that Defendants assigned the location of the work "at their respective worksites, or other locations they control", SAC p. 12 ¶ 4, Plaintiff does not allege that B.I. worked at a City-owned or operated location, or that the City "controlled" Chazaq in any way. Rather, the City-Commonpoint Contract confirms that Commonpoint was required to "secure and maintain" a Worksite for SYEP Participants (Kruk Decl. at Exh. B (CNY000135)), and that the Worksite (i.e., Chazaq) determined the location of B.I.'s work (i.e., Chazaq's headquarters in Queens) (Dkt. No. 49-1 p. 1; Dkt. No. 49-2 p. 1). Thus, the fourth factor fails to suggest that the City was B.I.'s employer. *Washington*, 2021 U.S. Dist. LEXIS 167911, at *8 (finding plaintiff's "conclusory argument" that the alleged employer determined the location of her work "unpersuasive").

**e. The City Had No Right to Assign B.I. Additional Projects.**

The sixth factor involves an assessment of whether the hiring party had the right to assign additional projects. *Reid*, 490 U.S. at 751-752; *Washington*, 2021 U.S. Dist. LEXIS 167911, at *7.

Here, the City had no right or ability to assign B.I. projects or tasks. Rather, as described above, Chazaq was responsible for providing B.I. his work-based experience and duties. Kruk Decl. at Exh. D (CNY000200); Dkt. No. 49-1 p. 2. Further, Commonpoint, in collaboration with Chazaq, was responsible for developing assignments and providing B.I. with written job descriptions defining the tasks and standards for each. Kruk Decl. at Exh. B (CNY000126-128). Given these facts, Plaintiff cannot plausibly allege that the City had any right to assign B.I. additional projects or tasks. *Tightseal Annuity v. Tightseal Constr., Inc.*, 17-CV-3670, 2018 U.S. Dist. LEXIS 138041, *23-24 (S.D.N.Y. Aug. 14, 2018)(dismissing NYCHRL claim in part because plaintiff did not allege defendant had the right to assign plaintiff additional projects).

**f. The City's Control Over the Method of Payment to B.I. Does Not Create an Employment Relationship.**

The eighth factor requires courts to assess whether the hiring party has the right to control the method of payment. *Reid*, 490 U.S. at 751-752; *United States v. City of New York*, 359 F.3d at 92. Here, the City paid B.I. under SYEP; however, this alone is insufficient to give rise to an employment relationship. *See Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 437 (S.D.N.Y. 2017) ("[T]here was no formal control, even if the defendant were assumed to have determined plaintiffs' rate and method of payment.").

Here, the City's role in paying B.I. for his work at Chazaq under the SYEP was limited: (1) Commonpoint was responsible for monitoring and recording B.I.'s hours, monitoring for evidence of fraudulent timesheets, encouraging B.I. to enroll in direct deposit, distributing a payment card to B.I., and verifying B.I.'s payment at each pay cycle against payment reports. Kruk Decl. at Exh. B (CNY000136-137), and (2) Chazaq was required to certify B.I.'s time and attendance to ensure the hours reported reflected the hours worked. Dkt. No. 49-2 p. 4. Finally, a third party – and not the City – processed payroll, sent earnings statements to B.I., and worked

with Commonpoint to resolve any discrepancies between payments and payment reports. Kruk Decl. at Exh. B (CNY000136-137).

**g. B.I.'s Work Was Not Part of the City's "Regular Business".**

Finally, the tenth and eleventh factors[3] require an assessment of whether B.I.'s work was part of the regular business of the hiring party and whether the hiring party is in business. *Stack v. Karr-Barth Assocs.*, 18-CV-10371, 2021 U.S. Dist. LEXIS 51169, at *14 (S.D.N.Y. Mar. 18, 2021) ("If a hired party is performing tasks that directly relate to the objective of the hiring party's business, it lends credence to an employer-employee relationship."). Here, the DYCD does not engage in any "business". Indeed, the SAC does not allege that it is. *See*, *generally*, SAC. Plaintiff fails to allege plausible facts under these factors because B.I. was hired to answer Chazaq's phones, make copies, file, fax, schedule appointments, and sign in Chazaq's customers and clients. Dkt. No. 49-1. These tasks fall within Chazaq's "regular business". Thus, Plaintiff fails to plausibly allege that B.I.'s work was part of the City's "regular business" under the 10th and 11th factors.

In short, an assessment of the 13 factors shows that Plaintiff did not, and cannot, plausibly allege that the City had control over B.I.'s "day-to-day activities," much less "direct, obvious, and concrete" control over B.I.'s work at Chazaq. *Id.* ("The *Reid* factors countenance a relationship where the level of control is direct, obvious, and concrete, not merely indirect or abstract.").

[3] Factors 7, 9, 12, and 13 are not relevant. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000) (noting that "a court must disregard those factors that, in light of the facts of a particular case, are (1) irrelevant or (2) of indeterminate weight—that is, those factors that are essentially in equipoise"). Factors 7 and 9, which require the court to assess *Plaintiff's discretion* over when and how long to work is most applicable to the law of agency. Factors 12 and 13, which require an assessment of employee benefits and tax treatment, are irrelevant because B.I. did not have "employee benefits" and his tax treatment is irrelevant whether B.I. and the City were in an employer-employee relationship. *Meyenhoffer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 46 (S.D.N.Y. 2020) (noting that "formalistic factors like employee benefits and tax treatment are not to be rigidly relied upon.").

Accordingly, Plaintiff fails to plausibly allege an employment relationship between B.I. and the City and his claims under Titles VII and IX and the NYCHRL should be dismissed.

**POINT IV**

**PLAINTIFF'S FEDERAL AND LOCAL LAW CLAIMS OF SEXUAL HARASSMENT LIKEWISE FAIL BECAUSE THE SINGLE- AND JOINT-EMPLOYER DOCTRINES DO NOT APPLY.**

In the absence of a formal employment relationship, two doctrines can enable a plaintiff to assert employer liability: the single- and joint-employer doctrines. *Arculeo v. On-Site Sales & Mktg.,* 425 F.3d 193, 197-98 (2d Cir. 2005). Neither apply here. Rather, the documents that this Court may consider in this motion confirm that Chazaq and Commonpoint are separate and distinct non-profit organizations, and B.I. was merely the beneficiary of a program established by the City where the City paid his wages. Accordingly, Plaintiff's federal and local law human rights law claims against the City should be dismissed.

To establish a single-employer relationship, which permits formally distinct entities to comprise one entity, a plaintiff must show interrelation of operations, common management, common ownership, and centralized labor-relations control. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240–41 (2d Cir. 1995); *Pottash v. Hello Living, LLC*, 19-CV-4530, 2021 U.S. Dist. LEXIS 21458, *8-10 (E.D.N.Y. Feb. 2, 2021). As such, the single-employer doctrine is confined to two contexts: (i) a parent and its wholly owned subsidiary, and (ii) the subcontracting of a plaintiff's employment to another distinct employer. *Gulino*, 460 F.3d at 378.

Here, neither context is present. Instead, Plaintiff recites various "terms of art" in a conclusory manner, which fail to plausibly allege a single employer situation. SAC pp. 8-10 ¶¶ 12-12(e); p. 11 ¶¶ 2-5. In particular, Plaintiff alleges (i) that the City acted as a "parent" to "subsidiaries" Chazaq and Commonpoint, (ii) that "all Def[endant]s represented a single integrated

enterprise", (iii) "[c]ommon management pursuant to the SYEP and worksite contracts," and (iv) that each Defendant "created a common financial control and ownership contracts." SAC pp. 8-10 ¶¶ 12-12(e); p. 11 ¶¶ 2-4. But "merely reciting the elements of the single employer doctrine" is not enough from which courts can infer that two entities should be treated as single employers. *Pottash*, 2021 U.S. Dist. LEXIS 21458, at *11 ("There are no specific, non-conclusory facts alleged from which to infer that the [defendants] had interrelated operations, common management, common ownership, or centralized control of labor relations."); *Washington*, 2021 U.S. Dist. LEXIS 167911, at *9-11 (dismissing "conclusory" allegations that defendants were "single employers" under the single-employer doctrine).

Lastly, but significantly, the City-Commonpoint Contract provides that "nothing contained in [any such contracts] … create any contractual relationship" between the City, Chazaq, and B.I. *See* Kruk Decl. at Exh. B (CNY000135). Accordingly, Plaintiff did cannot plausibly allege that the City, Chazaq and/or Commonpoint should be treated as a "single employer."

The joint-employer doctrine, by contrast, assumes that employers are separate entities that "handle certain aspects of their employer-employee relationship jointly." *Arculeo*, 425 F.3d at 198. Joint-employment analysis considers "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Triola v. ASRC Mgmt. Servs.*, 10-CV-560, 2011 U.S. Dist. LEXIS 142429, at *19 (E.D.N.Y. Dec. 12, 2011). No such commonalities exist here as the City did not control the terms and conditions of B.I.'s employment.

Here, Plaintiff alleges that "SYEP contracts and Worksite Contracts for this program detail the interviewing, hiring, and firing of summer interns [and] that the reports and references of the Defendants to each other, alone and together, controlled the discipline, pay, insurance if any, records, and supervision of the SYEP program." SAC p. 10 ¶ 12(e).

As an initial matter, merely stating that certain contracts show a joint-employment relationship, without specific factual allegations supporting a joint-employment relationship, is insufficient to survive a motion to dismiss. *See e.g., France v. Touro Coll.*, 14-CV-4613, 2016 U.S. Dist. LEXIS 20006, at *23-24 (E.D.N.Y. Feb. 16, 2016) ("Apart from these conclusory allegations that [defendant] was her employer . . . plaintiff's Amended Complaint contains few, if any, factual allegations that would support her claim that [Defendant] controlled the terms and conditions of her employment and therefore was a joint employer. . . "); *Gonzalez v. City of New York*, 15-CV-3158, 2015 U.S. Dist. LEXIS 170605, at *8 (E.D.N.Y. Dec. 21, 2015)(dismissing "joint employment" claim as "entirely conclusory and consist[ing] only of a recitation of the legal standard."); *Triola*, 2011 U.S. Dist. LEXIS 142429, at *19 (dismissing Title VII claim where joint employer claim was asserted "in a conclusory fashion").

Moreover, contrary to Plaintiff's argument, the City-Commonpoint Contract, Chazaq's Worksite Assurance and Certification Agreement, and Chazaq's Worksite Application undermine Plaintiff's allegations of commonality in hiring, firing, discipline, records, and supervision. With respect to B.I.'s hiring, the City-Commonpoint Contract confirms that SYEP participants like B.I. submitted their SYEP applications to Commonpoint, which enrolled the applicant in the SYEP. Kruk Decl. at Exh. B (CNY000128-129). Moreover, Chazaq (and not the City) was responsible for establishing B.I.'s job title, duties, and schedule. Dkt. No. 49-1 p. 2.

The City also had no role in firing or disciplining SYEP Participants. Instead, the Worksite Handbook states that "if [a] worksite [] determined that they no longer wish[ed] to have a Participant working at their site, the Worksite supervisor must . . . *contact the SYEP Provider* [and] arrange for the return of the Participant *to the SYEP Provider*." Kruk Decl. at Exh. D (CNY000206-207)(emphasis added). Further, "[u]nder no circumstance [was] the worksite authorized to send

[a] Participant home . . . without notifying and receiving consent *of the SYEP Provider*." *Id*. (emphasis added). These provisions show that Commonpoint and Chazaq—and not the City—were responsible for SYEP Participants' firing and discipline.

Next, Chazaq and Commonpoint – not the City – was responsible for maintaining records relevant to the SYEP Participants' schedule, hours and attendance. *See* Kruk Decl. at Exh. B (CNY000131, 135); Dkt. No. 49-1 p. 2.

Finally, the City does not supervise SYEP Participants. Rather, during the SYEP, Chazaq supervised B.I.. Dkt. No. 49-2 p. 4 ("The Worksite will fully provide the activity described in the Worksite Application and will *provide supervision* in the appropriate ratio to all Participants assigned to this Worksite at all times.")(emphasis added). Moreover, Commonpoint – and not the City – was required to make weekly visits to Chazaq (Kruk Decl. at Exh. D (CNY000203)) and solicit B.I.'s feedback on the value and appropriateness of his work assignments (*id*. at Exh. B (CNY000131)). For these reasons, Plaintiff fails to sufficiently allege a joint-employer relationship to support a claim under Title VII, Title IX or the NYCHRL and this claims should be dismissed.

## POINT V

## PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE OF A LACK OF CAUSAL CONNECTION BETWEEN B.I.'S NYPD REPORT AND HIS EVENTUAL EXPULSION FROM A PRIVATE HIGH SCHOOL.

Plaintiff alleges that "Defendants, their agents, friends, colleagues, associates, and other persons" retaliated against B.I.. SAC p. 20 ¶ 40. To state a First Amendment claim of retaliation against the City, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the [City] defendant took adverse action against [B.I.], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)(citation, alteration, and quotation marks omitted).

Plaintiff alleges a protected activity in the form of B.I.'s complaint of sex harassment and assault to the NYPD. SAC p. 20 ¶ 40. Plaintiff thus meets the first prong of the test. Plaintiff does not, however, meet the second third prongs.

While Plaintiff alleges that B.I. suffered a materially adverse action in the form of his expulsion from his private high school "without cause" and "without counseling or psychological assistance or help in any manner," *id*. ¶ 40(b), Plaintiff does not – and cannot – allege that the City was the decision maker responsive for B.I.'s expulsion. Likewise, to the extent that Saphirstein's "appear[ance]" at B.I.'s high school to harass and intimidate B.I *(id*. ¶ 40(a)) rises to the level of a materially adverse action, the City is also not connected to Saphirstein's visit to the school because Plaintiff does not allege Saphirstein was a City employee or played in role his in visit to the school.

Even if Plaintiff had sufficiently alleged that the City, a City agency, or a City employee took adverse action against B.I., which Plaintiff has not, Plaintiff also fails to allege any causal connection between B.I.'s protected activity and the adverse action. Plaintiff alleges that "the Yeshiva high school contacts [] led to the original SYEP interview and qualification of" B.I. for the SYEP.[4] SAC p. 20 ¶ 40(b). This allegation fails to establish the requisite connection. Plaintiff does not detail how B.I.'s alleged expulsion from his private school related to B.I.'s report to the NYPD. *Tutora v. Gessner*, 17-CV-9517, 2019 U.S. Dist. LEXIS 51974, 2019 WL 1382812, at *6 (S.D.N.Y. Mar. 27, 2019)(dismissing retaliation claim where the allegations were "insufficiently specific and detailed factual material to make out a First Amendment claim . . ."). For example, Plaintiff does not allege any animus, such as written or verbal statements of retaliatory intent.

[4] SYEP Participants do not interview to qualify; they are selected through a lottery or direct recruitment by a SYEP provider. *See* "SYEP FAQs" available at: https://www1.nyc.gov/assets/dycd/downloads/pdf/2021SYEP_OY_FAQs.pdf (accessed Dec. 13, 2021).

Plaintiff further does not allege that B.I.'s private school was aware of B.I.'s report to the NYPD. Plaintiff also does not allege a temporal proximity between B.I.'s report and any adverse action. Rather, Plaintiff merely alleges that B.I. was expelled "eventually." SAC p. 18 ¶ 30; *Ingram*, 2019 U.S. Dist. LEXIS 49374, at *18 ("Simply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss.").

Absent any alleged relationship between B.I.'s report to the NYPD, any materially adverse action by the City, a City agency or City employee, and Saphirstein's visit or B.I.'s expulsion from school, Plaintiff's retaliation claim against the City should be dismissed as unsupported, speculative and conclusory. *Dorsey v. Fisher*, 468 Fed. Appx. 25, 27 (2d Cir. 2021)(summary order)("Without more, where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation.").

## POINT VI

## PLAINTIFF CANNOT ASSERT THIRD-PARTY BENEFICIARY RIGHTS.

Under New York law, a party asserting rights as a third-party beneficiary must allege: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit, and (3) that the benefit to it is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost." *PHL Variable Ins. Co. v. Town of Oyster Bay*, 16-CV-4013, 2017 U.S. Dist. LEXIS 83262, at *32 (E.D.N.Y. May 30, 2017). With respect to the second element, a third-party beneficiary is "intended" where "(1) no one other than the third party can recover if the promisor breaches the contract, or (2) the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Ctr. for Discovery, Inc. v. D.P.*, 16-CV-3936, 2018 U.S. Dist. LEXIS 55450, at *19 (E.D.N.Y. Mar. 31, 2018).

Here, Plaintiff claims B.I. was "a third-party beneficiary of the contracts" because B.I. "was to receive as [a] third party a benefit from the contracts made between the Defendants" and "had a right to sue for damages and compensation if [Defendants] did not fulfill their obligations under the contracts described above." SAC ¶¶ 17(b)-18(a). According to Plaintiff, the contracts "contained benefits of pay, remuneration, work experience and skills," which "should be read as a third-party beneficiary clause" benefiting B.I. SAC pp. 6-7 ¶ 18(a). Nowhere in the SAC, however, does Plaintiff point to any provision or contractual language conferring third-party beneficiary rights on B.I.. *Gorbaty v. Wells Fargo Bank, N.A.*, 10-CV-3291, 2012 U.S. Dist. LEXIS 55284, at *57 (E.D.N.Y. Apr. 2012) (dismissing third party beneficiary claim where plaintiff failed "to point to anything" in the contract demonstrating an intent to create enforceable third-party beneficiary rights). In addition, the SAC does not allege facts showing that "no one" other than B.I. could recover in the event of a breach, or that the contractual language "clearly" evidences an intent to permit B.I.'s enforcement. *United Derrickmen & Riggers Assoc. Local Union No. 197 v. Local No. 1 Bricklayers & Allied Craftsman*, 119 F. Supp. 2d 168, 173-74 (E.D.N.Y. 2000) (noting that "[t]he parties' intent to benefit a third party must be shown on the face of the agreement."). Rather, the City-Commonpoint Contract demonstrates the opposite—that there was no intent to permit B.I.'s enforcement—because that contract made clear that "nothing" contained within it "create[d] any contractual relationship between DYCD and the Worksite Sponsor or Participant". Kruk Decl. at Exh. B (CNY000135). Accordingly, Plaintiff's conclusory assertion that the "benefits of pay, remuneration, work experience, and skills" should be "read as a third-party beneficiary clause" fails and this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court issue an order granting the City's motion to dismiss the SAC, with prejudice, and awarding the City such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 13, 2021

GEORGIA M. PESTANA
Corporation Counsel of the
City of New York
Attorney for Defendant City of New York
100 Church Street
New York, New York 10007
(212) 356-0893
ckruk@law.nyc.gov

By: s/
Carolyn E. Kruk
Assistant Corporation Counsel