UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------------------X

B.I . An Infant , by Arthur Iskhakov,

Plaintiff

21 CV 01910 JPO

V

Chazaq,

Commonpoint,

City of N.Y. ,

Defendants.

PLAINTIFF OPPOSITION TO

COMMONPOINT,

MOTION TO DISMISS,

THE CITY OF NEW YORK

MOTION TO DISMISS

-----------------------------------------------------X

INTRODUCTION

The DEFENDANTS COMMONPOINT AND THE CITY OF NEW YORK MOTIONS SEEKING DISMISSAL OMIT THE ESSENTIAL FACTS (e.g. THE INFANT PLAINTIFF); ARE INCORRECT IN LEGAL ANALYSIS, SO THAT THE DISMISSAL MOTIONS SHOULD BE DENIED.

COMMON POINT AND THE CITY HAVE COMMITED EMPLOYMENT DISCRIMINATION AS SINGLE , JOINT EMPLOYERS, SUBSIDIARY CONTRACTUAL EMPLOYERS. PERMITTING THE SEX ABUSE, EACH BREACHED THEIR CONTRACTUAL OBLIGATIONS TO THE INFANT PLAINTIFF IN THEIR SUMMER YOUTH EMPLOYMENT PROGRAM.

DEFENDANTS BREACHED THEIR COMMON LAW DUTIES OF DUE CARE, EACH AS EMPLOYERS, RECEIVING FUNDING, AS CONTRACTUAL PROVIDERS OF THE CITY SUMMER YOUTH EMPLOYMENT PROGRAM, SYEP, SO THAT THE DEFENDANTS ARE LIABLE PURSUANT TO LAW TO THE INFANT PLAINTIFF.

Plaintiff notes that Defendant Chazaq has settled with Plaintiff and is no longer a Defendant herein as it is released from this case pending the papers to be filed with this Court.

## ONE. FACTS UPON WHICH DEFENDANTS ARE LIABILE TO PLAINTIFF OPPOSING THE DEF. NYC MOTION

The City of NY stated as voluntary discovery, Carolyn Kruk, Esq. Asst. NYC Corp. Counsel, e mail dated Sept. 23, 2021.

Carolyn Kruk Asst Corp Counsel I write this e mail provide:

" a summary of New York City Agency of Youth and Community Development Summer Youth e, the provider relationships and produce records that detail the SYEP and BI involvement in the program,

The SYEP is a youth employment program City contract with Community based organizations (SYEP) providers who then develop work based experiences for youth 16-24 that connect them to one of the City's prior sectors.....fosters civil engagement. .builds skills and exposes youth to promising career pathways

<u>In this case NYC entered into a contract with Def. Commonpoint Queens a SYEP NY000008 - 149.</u>

SYEP providers like Commonpoint are then in turn RESPONSIBLE (E. ADDED) for connecting youth SYEP Participants with employers, which SYEP calls "Worksites" ...

SYEP participants are paid by the City.

Worksites provide SYEP with work experience that enables them to acquire skills leading to greater employability.

In this case COMMONPOINT , as a SYEP provider entered into a contract with Defendant CHAZAQ ORGANIZATION USA INC., CHAZAQ, to serve as a worksite.

This contract took the form of a worksite application (attached Bates CNY 0000221-223 coupled with the worksite Certification and Assurances (DYC Dev.) does not have a copy of such, COMMONPOINT and Chazaq should have copies.

Attached are the SYEP documents that were used in 2019 when BI participated in the program...

The SYEP Worksite Handbook attached bearing Bates cny000209 which describes the Providers and Worksites obligations

With respect to the providers obligations, providers must assess each participant to determine their work related interests and skills and make efforts to match them with a job that will complement these interests and skills. , visit each worksite once a week. "

These Defs. NYC admitted facts, and documents are the basis for legal liabilities for the sex abuse the Plaintiff Infant suffered from the Defendant SYEP providers.

TWO ;OPPOSING THE DEF. NYC MOTION TO DISMISS

Contrary to the Def. City motion the City was a joint , owner/subsidiary, contractual employer of Plaintiff BI.

Def. City motion further provides facts and law that support Plaintiff's SAC and arguments opposing Def. Commonpoint dismissal motion; proving instead that Def. Commonpoint was a joint/subsidiary employer so that the Commonpoint motion to dismiss must be denied.

At conclusion of this Section, we will review City's stated facts and law that prove Def. Commonpoint was BI employer, along with the Def. City of NY

## THREE: CONTRARY TO THE DEF. MOTIONS

The 13 point common law employment test prove the Defs. City, Commonpoint and Chazaq each had control over the day to day activities of the alleged servant (Plaintiff BI)

Def. Common point owed contractual and common law duties to protect the Infant Plaintiff from the sex abuse that occurred at Def. Chazaq. premises.

In total the Def. City, Commonpoint and Chazq each had joint and severaL, total control and supervision of the infant Plaintiff , pursuant to the Summer Youth Employment Program created and funded by taxpayer monies for the benefit of the Infant Plaintiff, and other infant Plaintiffs.

It is their failure in fact to protect the Pltff. Infant from Saphirstein, a sexual predator that is the core basis of their joint and several liability herein; their failures that turned the SYEP for the Infant Plaintiff into a life damaging experience; instead of the educational enriching experience that all the contracts, and evidence and monies paid to and by the Defendants to each other promised the Infant Plaintiff.i.

Plaintiff SAC does allege the factual 13 points factors creating the employment relationship.

The City admits paying infant Ptff. BI (p. 13 City Motion) SAC p.4 . parg. 11 by debit card

A. Control: By Millions of Dollars in Funding, Payroll Records, Rules, Salary Payment

The City funding of millions of dollars ( dollar amounts not revealed by Defs.) is the essential control element of each and every aspect and detail of the SYEP by the contractual relationship between all the Defendants/Plaintiff.

Assessing the "hiring party's right to control the manner and means by which the work is accomplished U.S. v City of NY 359 F3 at 92 is essential.

The funding, signing and negotiation of the contract and documents on this motion between Defs: create the Def. NYC control of Infant Pltff BI manner, means of work:

Chazaqs' : BI worksite application, Worksite Assurance and Certification Agreement, Worksite Handbook, show that Chazaq in contract with the City, and Def. Commonpoint pursuant to that funded (millions of dollars upon information and belief, year after year, ) , approved, contracted the SYEP. Defs pursuant to the terms of the contracts, written agreements had in fact joint control with City and each other, and over Plaintiff BI duties and work product.

"Commonpoint": the City argues p. 14 Memo i " was responsible for assessing BI work related interests, and skills, ii. Visiting Chazaq on weekly basis, and iii soliciting BI feedback on the value and appropriateness of his work assignments Ex B CNY 000131.

This is contrary to the SAC par. 10, 11 which states Def. NYC DYCD interviewed and evaluated BI application, oriented him, the referred him to the other defendants herein; creating a question of fact to be resolved at trial.e

The disclaimer language in the City -Commonpoint Contract "no contractual relationship" with BI or Chazaq: is not binding upon this Court as fact finder, which may look at trial to the actual actions and facts of the parties to determine the Def. joint control over Infant BI work product.

The City's contract review process, and funding, gave it the joint /owner/subsidiary control over Defs SYEP as stated herein and in the SAC..

The SAC allegation all Defs.  controlled the means by which the SYEP summer intern program, educational product experience, work was accomplished is correct aftere reading Defs. Motions and exhibits..

Def. NYC Funding is joint control, the year prior, the year of the sex abuse, and the years after for City funding to continue as Def. City maintains a level "of supervision necessary" to pay taxpayer money to control the SYEP participant infants, including Plaintiff; all their daily duties in total in the SYEP program.

B. DEF NYC "CONTROL OF SKILL" BY TAXPAYER FUNDING OF THE SYEP PROGRAM, BY  CREATING THE APLICATIONS, AND THE ORIENTATION OF PLAINTIFF BI.

Def. NYC Motion states Codefendants roles :  " ..City -Commonpoint  contract confirms...Common point as the SYEP provider was required to place BI at a Worksite based on Common point's assessment of BI skills" Def. NYC  Memo page 15 p.b,  See Kruk Decl. Ex b CNY 000127, also Exh. D CNY 000201:

Then Def. "Chazaq requested Participants who could type..."

Chazaq and Commonpoint – and the Def. City_ identified the skills Participants needed to work at Chazaq " skill control that was determined by the Funding for the Infants that participated in the SYEP". See the SAC that stated Def. City interviewed and placed Inf. Pltff with Commonpoint who referred him to Chazaq ( million dollar contracts of duplicate/joint work that secretly benefited Def. Commonpoint and Def. Chazaq ) .

Plaintiff argues the Summer Youth Employment Program was NYC taxpayer funded, with Joint total control, skill specifications, orientation, all to benefit NYC resident summer youth participating in the SYEP program, and Defs who were paid to administer the SYEP.

C. City Taxpayer Funding was the source of Pltff BI " Instrumentalities/tools" at Def. "charities"; Def. NYC paid for the SYEP applications, orientation, counselors, personnel, payroll, payment Debit card to the Infants enrolled in the program, and SYEP contracts, applications, payroll, evaluation, personnel records produced herein, work instrumentalities, telephones, copy machines, computers, at Chazaq, even the pay Chazaq employee Saphirstein received for supervising Pltff. Infant, including the use of his auto to move supplies, where and how he committed the sexual abuse, all plausible, common sense, logical facts inferred from the SAC.

It's illogical to assume that the "tools, etc" that Chazaq/Comm. provided was paid for by anyone other than Def. City, and there are no facts asserted otherwise.

D. The City jointly with Defs. did determine the location of BI work :

The Def. City had an application process and an orientation session with Inf. Pltff before referring him to other Defs. herein.

" the City- Commonpoint contract confirms Commonpoint was required to "secure and maintain" a Worksite for SYEP Participants (Kruk Dec. Ex B CNY 000135, and that the worksite

( i. e, Chazaq Queens HQ): Contract compliance to obtain the City funding determined the workplace.)

It is logical to infer that the City in negotiating and contracting the SYEP with Defs. Commonpoint and Chazaq., did have general and specific knowledge of the entire scope of the work program that it paid taxpayer money for, then referring over infants/youth to Defs. For participation in the SYEP for NYC residents.

## E. THE CITY BY FUNDING AND SIGNING SYEP CONTRACTS HAD THE RIGHT TO ASSIGN ADDITIONAL PROJECTS

" Commonpoint in collaboration with Chazaq was responsible for developing assignments and providing BI with written job descriptions defining tasks and standards for each Cruk Decl. Ex B CNY 000126-28. . ..Chazaq was responsible for providing BI his work based experience and duties Kruk Dec. Ex. D CNY 000200) Dkt 49-1 p.2

The City funded contracts specified all /any projects Plt. BI infant would work. Certainly if Def. NYC Dept. Youth needed additional project work for any reason pursuant to the contracts it need only direct the Defs., being paid millions of taxpayer dollars, to assign additional projects, whatever projects it may have directed; Defs. Would agree as they were being handsomely paid.

## F. THE CITY'S CONTROL OVER THE METHOD OF PAYMENT TO INFANT PLAINTIFF BI DOES CREATE AN EMPLOYMENT RELATIONSHIP IN THE CONTEXT OF ALL FACTS ALLEGED HEREIN, JOINTLY WITH DEFENDANTS.

Def. NYC admits to paying Pltff BI by a Def. NYC supplied debit payment.

Contrary to the Def. City arguments, the debit card payments were formal, absolute and total control of payment, pursuant to the funded SYEP contracts, joint with Defs.:

“Commonpoint was responsible for monitoring ...recording BI hours..(no) fraud...encouraging BI to enroll in direct deposit...distributing a payment card to (infant) BI, verifying BI payment...cycle.. Kruk Dec. Ex. B CNY 000 136-137

“Chazaq was required to certify BI time and attendance....hours reported /worked Dkt. 49-2.

A third party -not the City- processed payroll, sent earnings statements to BI, worked with Commonpoint to resolve any discrepancies ..payments/reports.” Kruk Decl. Exh. B CNY 000 136-37

Def. Citys' delegation to a 3rd party provider to process payroll does not relieve it as the joint employer of Pltff. BI pursuant to the SYEP contracts herein.

If it were that simple for employers to avoid liability under discrimination laws, every employer would simply contract with payroll providers as a means of escaping Title VII, Title IX, and NYSHRL compliance. This argument is clearly false and incredulous.

The Kruk e mail “voluntary discovery” attached P. payroll records pay history, hours worked, CNY 000219-220: This proves the Def. City agency Dept. Youth and Comm. Developt. supervised and administered Pltff. BI pay as EMPLOYER, jointly with the Defs.

See infra where Plaintiff supports the Single/ Joint/Subsidiary employer allegations in PSAC.

G. BI ‘S WORK IN THE SYEP WAS PART OF DEF. CITY REGULAR BUSINESS INCLUDING DEPT. YOUTH AND COMMUNITY DEVELOPMENT

10TH and 11TH Factors: The SYEP contracts and Infant Plaintiff BI was part of the regular business of the Defs. as hiring parties, and the Defs. are in “business” of educating infants as Pltff.

The Def. City and Def. Commonpoint and Chazaq were/are in the government/charity business of providing health, safety, EDUCATION, JOB SKILLS WORK TRAINING and welfare services to their constituents and SYEP Infants and Plaintiff in particular.

Contrary to the Def. City motion, Def. NYC Dept. Youth and Community Development wrote, supervised, and signed SYEP million dollar contracts lending credence to the joint/single/owner employer of Plaintiff Infant: a relationship to all Defs. herein.

This plain fact is clear and plausible in Plaintiff's SAC.

FOUR. IN CONCLUSION, IN OPPOSITION TO DEF. CITY MOTION, THE FACTS SHOW DEF. NYC WAS AN INFANT PLAINTIFF BI EMPLOYER WITH DEFS.

The assessment of the 11 relevant factors, above, the Def. NYC funding of the SYEP shows that Plaintiff SAC does plausibly allege facts that Def. City had single/joint/owner control over Pltff BI "day to day activities, obvious and concrete and direct" as stated above under Title VII, IX, NYCHRL.

FIVE:

<u>SINGLE AND JOINT EMPLOYER</u> DOCTRINES DO APPLY TO DEFENDANTS HEREIN

The SAC alleges facts that state and logically infer the following applicable to both the motions to dismiss of both Defs. herein (note Chazaq which has settled with Plaintiff BI).

The S<u>ingle</u> employer doctrine is applicable to all Defs. herein:

The interrelation of operations as funding, contracts, record keeping, between Defs, in the SYEP Program; between their contracted shared common management.

The Defs. SYEP provided the funding, contracts, and reporting of work supervised alone and together by the Defs. , individually and jointly, a "common ownership and (non) profit: of the SYEP program which was funded by the Def. City and lucratively paid to Defs Commonpoint and Def. Chazaq;

The SYEP program operated as a parent City of NY and its wholly owned / funded subsidiaries Defs. Commonpoint and Chazaq pursuant to the million dollar contracts paid to and between the Defs.

The SYEP contracts should be read as the subcontracting of Plaintiff Infant BI to the additional distinct employers, jointly. severally, shared, as Defs Commonpoint and Def. Chazq shared the taxpayer monies of the SYEP contracts.

The Def. Attorney Kruk e mails voluntary discovery 9/15/21 :

provide documents Def. NYC retained; prove City supervision of the work payments to Pltff BI at the Defs worksites: hours worked, and pay history C000219- 000220;

The Def. City possession, retention and production herein of Pltff BI pay records, and other documents, herein, contradict its argument p. 22 of its Dismissal Memo 2nd paragraph "....Chazaq and Commonpoint was responsible for maintaining records relevant to SYEP schedule, hours and attendance."

The Def. City had these records because contrary to its Dismisal Motion, it was the joint, etc. employer of Plaintiff BI, with the other Defs., required to and in fact did keep these BI

personnel pay records in the regular course of its business of government operating this SYEP program.

The Def. NYC responsibility to supervise the work location of Plaintiff BI for "child abuse" , the reporting requirement of Defs. Commonpoint and Chazaq to Def. NYC Dept. of Youth and Economic Development, see CNY 000202, prove the Def. NYC funding, ownership, supervision, and total control pursuant to all the SYEP contracts that the City wrote.

Recall the "golden rule" maxim, the City with the funding gold made the rules for SYEP which all Defs jointly shared the lucrative contracts and the work of the program described herein.

Contary to the Def NY Memo p. 22 Parag. 1-3 :

Pltff. SAC (p. 10, 11 ) states Pltff BI was interviewed, had an orientation session with DEF. NYC DYCD ; was hired and submitted an employment application to Def. NYC DYCD; which forwarded the application to Defs. Comm. and then to Def. Chazaq.

Def. NYC produced SYEP Pltff BI employment application CNY 000218 as it possessed that application, as it supervised in total pursuant to the SYEP contracts with Defs. the entire SYEP program which it funded by millions of taxpayer dollars; years before, and renewing for the years after the instant abuse herein. ,

Def. NYC possessed and produced and these documents, Pltff work application to be in SYEP, , and payroll documents as it was <u>the supervising single, joint, owner employer</u> of Infant Pltff BI contrary to the Def. NYC Memo p. 22.

Def. NYC ,in fact, by the SYEP contracts subcontracted its government summer youth program, which it has historically provided to youths of N.Y. City, ( which Plaintiff counsel participated in about 1963 Bronx, NY when it was administered by the NYC Parks Dept.)

Def. NYC states "Commonpoint, not the City, was required to make weekly visits to Chazaq...solicit BI Feedback on value and appropriateness of his work assignments...( CNY 000131): duties and obligations of a single/joint/subsidiary employer."

As the SAC and logical inferences from it state:

Def. NYC by controlling the funding, year after year, (e.g. the golden rule, having the "gold, so it makes the rules") provided the contracts creating the master/owner/ single/joint employer relationship between the Defendants, profiting the Defendants, that supports a claim under Title VII, Title IX, and NYSHRL so that the SAC should not be dismissed.

SIX: PLAINTIFF CORRECTLY ASSSERTS THIRD PARTY BENEFICIARY RIGHTS

The SYEP contracts were contractually:

one all binding between the parties

two : intended for the benefit of the Infant Plaintiff as a student, summer youth employee in the enrichment program as detailed herein, and in the contracts, and all exhibits

three: the benefit to Pltiff BI was immediate employment as detailed in the contracts, all facts herein, not incidental, that the entire SYEP guaranteed work to Infant Pltff. BI, , so that there would be compensation and the work benefit would not be lost as work

was guaranteed pursuant to the millions of dollars funded SYEP program, work would and could be provided by and between the Defs, ( at Chazaq and in Walgreen as SAC alleges )

Also: the third party Pltff BI "is intended" no one else than the Plaintiff BI could recovery salary for the work he did in the SYEP, see the Defs. Salary record keeping, hours, retention, supervision, all described above herein,

The language of the SYEP clearly evidences an legal oblilgation and intent to permit enforcement by the third party, P. BI, of the salary for the work he performed for and in the SYEP

## SEVEN : THE RETALIATION CLAIM MUST BE SUSTAINED

The facts stated in the SAC that the Def. NYC is a joint/single/master/subcontracting employer of BI with the other Defendants, it is bound by the materially adverse employment action: the expulsion of the Infant Plaintiff BI from his Yeshiva high school as retaliation for his having made the criminal allegation of sex abuse against against Defs. Employee Saphirstein, as the SYEP contractual reports between Defs. Commonpoint and Def. Chazaqa and Def. NYC provide the knowledge and information of the allegation and Saphirstein's arrest (case pending ), the

Joint and several knowledge and information sharing between the Defs. as it supervised the Infant BI the allegation in the SAC is neither conclusory or speculative.

## EIGHT: Opposing the Def. Commonpoint Motion To Dismiss

Contrary to the Commonpoint motion:

First note the Def. NYC admissions/statements above of the joint/single/subcontracted/contracted role Commonpoint was paid for and performed pursuant to the SYEP support the Plaintiff's opposition to Def. Commonpoint Motion.

The Def. Memo NYC arguing for dismissal in its favor, factually implicates Commonpoint as a single employer/joint employer/subsidiary employer of Pltff BI in the SYEP program, supra.

The Pl. SACt does allege the single/multiple actions taken by Commonpoint as an admitted "SYEP provider" of commission and omission resulting in liability to the Infant Plaintiff herein.

Pursuant to the SYEP contract ( U.I. B. that Commonpoint received millions of dollars of many years from Def. NYC. ) Commonp. was involved, and owed multiple duties of interview, reference and proper supervision of the Infant Plaintiff when it referred Plt. B.I. to Chazaq.

Having breached its duties of supervision, its referral of BI pursuant to the paid SYEP contract, Def. C. is liable as a joint employer, subsidiary employer of Plaintiff Infant, stated above.

The admitted facts above, and the many facts alleged above, show that Commonpoint was involved with the entire course of events of sex abuse that occurred.

B. COMMON POINT'S MOTION CLAIM OF 'TIME BARRED /STATUTE OF LIMITATIONS' BAR TO PLAINTIFF'S CLAIM IS CONTRARY TO LAW. THE STATUTE OF LIMITATIONS "DEFENSE" MUST BE DENIED

THE DEFENDANTS CREATED THIS COMPLEX, DUPLICATIVE, SECRETIVE SYEP PROGRAM. THEY SHOULD NOT BENEFIT FROM THE CONFIDENTIAL, UNCLEAR BYZANTINE RELATIONSHIPS OF THE DEFS THAT BENEFITED DEFS BY

MILLIONS OF DOLLARS TO AVOID LIABILITY TO THE INFANT PLAINTIFF FOR THE SEX ABUSE HE SUFFERED.

COMMONPOINT AND DEFENDANT CHAZAQ AND THE CITY OF NY FAILED TO DISCLOSE THEIR EMPLOYER IDENTITIES TO THE INFANT PLAINTIFF, RESULTING IN THE DELAYED FILING OF FILING OF THE EEOC CLAIM AND COMPLAINT HEREIN.

Common point should not "profit" from its secretive wrongdoing herein, by its failing to disclose to the Infant Plaintiff by pay stub, letter, instruction, clear statement, that it was a SYEP EMPLOYER of the Infant, that Common Point referred the Infant Plaintiff to Defendant Chazaq, see supra.

There is no mention of any Commonpoint disclosure of its role (or taxpayer money received) to the Plaintiff Infant anywhere in Defendants motion.

Note as stated in the June 2021 motion to amend its complaint, Defendant Chazaq and the City did not reveal the complex, duplicative, convoluted contractual, profitable relationship of Defendants as single, joint, subsidiary employers of the SYEP to the Plaintiff, and NYC Taxpayers, herein at any time during employment, or during the initial months of litigation.

As the docket herein shows it was only after months of litigation against Chazaq, conferences, mediation sessions, that Chazaq waiting for months to pass, finally revealed provided the facts of the Defs role in the SYEP.

It is in inequitable for Commonpoint with “unclean hands” of failing to disclose its SYEP/employer relationship to the Infant Plaintiff, to now seek the benefit of dismissal, having not provided the Infant Pltff. with any paper, notice, document, contract, orientation, pay stub, report card, revealing it its role as SYEP employer in any manner, as it received millions of the SYEP contract.

It is akin to the “ defendant having killed his parents, asking for the mercy of the Court.”

It is the Defendant, not the Plaintiff herein, who seeks “judicial largesse” (the words of the Plaintiff motion) as it seeks statute of limitations dismissal when it failed to disclose its role as SYEP/employer to Infant Plaintiff in any manner at all.

These Defendants “ secretive silence” was the very basis that this Court ruled that the Plaintiff may serve the amended complaint herein upon Defendant Common Point.

For Common point to claim this statute of limitations defense based upon a failure of disclosure to the Infant Plaintiff , its employment SYEP role undermines its credibility in total, so that it motion to dismiss should be denied.

Commonpoint was a joint employer, subsidiary employer, single employer with other Defs. , and is liable for the sex harassment under federal, and state law.

Pursuant to the Def. NYC/Commonpoint valuable, taxpayer paid SYEP contract there was:

a commonality of the hiring, firing discipline of the Infant Plaintff by Def. Commonpoint pursuant to its duties of it interview, supervision and reference of P,. BI to Def. Chazaq. (apparently Plaint. was interviewed by Def. Commonpoint and Def. City) .

As the motion facts and the SAC present: the was also a commonality of each of Defendants supervision of the Infant pay for work/hours worked (even as the pay be debit card was paid by the Def. City), job/task selected to teach the Pl. Infant employment / work skills present and future, all the premises selected by Defendants pursuant to the reference of Pltff. Infant from NYC to Commonpoint to Chazaq.,

The Infant/ Summer Youth Employment Program distinguish the facts herein from all the adult employment cases cited by Def. Comm.

Vitti v Macy's 758 F. App x 154 (2nd Cr. 2018) concerns adult employment at Macy's Dept .

Store. Def. Commonpoint motion omits at page 9 , proper, full and complete statement of the facts herein, and fails to correctly distinguish Vitti from Plaintiff Infants' SYEP based claims herein.

Correctly, Commonpoint after receiving the reference of Infant Pltff. , (being paid for that) training (page 9) then its subsequent reference/evaluation, and the supervision of that reference it made of Infant Plaintiff to Chazaq; did control the Infant Plaintiff as it made this reference and evaluation of the tasks, work, experiences, learning, of the Infant Plaintiff in the SYEP to Chazaq.

Def. Comm. Involvement with the Infant Pltff. was then greater than Def. Clinique in Vitti, supra; unlike Clinique Commonpoint shall be deemed a joint employer herein of the Infant Pltff..

NINE; DEFENDANTS WERE A SINGLE EMPLOYER, JOINT, OWNER/SUBSIDIARY .

Using the subsidiaries of a parent company 4 part test:

Interrelationship of Operations:

Here the Defendants were SYEP interrelated: Def. NY City Funding Commonpoint as a Provider, and Chazaq as both a provider and worksite. Upon inf. and belief these functions were indistinguishable to and for the Infant Plaintiff as a NYC SEP program participant, and were interrelated among the different Defendants as each provided interviews, evaluations, references at their respective worksites, even as the harassment sex abuse occurred at the Chazaq location/worksite.

Common Management Centralized Control Infant Labor , and Common Ownership

The SYEP taxpayer paid contracts provided for detailed stated common management of the Infant interns including Plaintiff, there was a centralized Defs. SYEP mandated and paid/agreed control of the SYEP program. See supra.

The City taxpayer payments pursuant to the SYEP Contracts between the Defendants (recall none were unpaid volunteers) were in fact a payment created common type ownership by the Defendants of taxpayer money.

The Infants including Plaintiff in the SYEP were evaluated, referred, supervised and controlled by the Defendants, pursuant to “central” contracts that governed the SYEP .

The Defendants pursuant to SYEP contracts did have a single common “ownership” of taxpayer money that flowed from NYC to and through Comm. To Chazaq, without this taxpayer money/contracts there would have been any SYEP for these Defs.

The amended complaint alleges many facts, as are stated herein in this motion, to allow this court to conclude that Commonpoint as employer, pursuant to the SYEP paid contract, for which it

was paid taxpayer money, the interview, evaluation, and reference ( or not to refer) of Platff. Infant, did have a duty to supervise Chazaq's employee Saphirstein, to refer and or not refer the Infant Plaintiff to Chazaq, thereby had control over whether Pltff Infant was referred to and present at Chazaq, so as to prevent the sex assault, etc..

TEN: PLAINTIFF SYEP SUBSTANTIAL REMUNERATION INCLUDING MONIES AND WORK EXPERIENCE , ETC. IN PAID CONTRACTS MAKE PLTFF. BI DEF. EMPLOYEE

Def. Comm. Fails to distinguish its status as a SYEP OF THE INFANT PLAINTIFF .. from adult Plaintiffs and their employers in the cases it cites : page 10, 11, 12, 13.

Defs. Motion/reliance on Gulino NYS Dept. Educ. 460 F. 3rd 361, 2nd Cir. 2006 , is an error as that case involved adult teacher educators suing the NYS Dept. of Education regarding discriminatory testing.

The SYEP "level of control" was "direct, obvious and concrete and not abstract, beyond mere "basic curriculum and credentialing requirements for adult teachers.

This is distinguished from Defendants herein paid contractual control over the Infant Plaintiffs it interviewed, evaluated, referred, supervised and had work for etc.,

The amended complaint does allege the reference, interview, evaluation, referral, work paid contractual work of Defts as a direct, obvious and supervisory relationship between all Defendants jointly, severally, alone and together.

The documents referred to in the complaint, the paid SYEP contracts between the Defendants, establish that the Defendants work relationship with the Infant Plaitff., the Defendants NYC and

Commonpoint identification of Infant Pltff. “skillset, , providing written application, evaluation, referral, orientation, the day to day control of his activities, the general and specific work, and tasks done on any given day for INFANTS IN THE SYEP PROGRAM DISTINGUISH and are far different, more pronounced, and from the “basic curriculum and credentialing requirements of excluded employer responsibilities” in Gulino, supra, adult teacher Plaintiffs.

The evidence Platff. Inf. cites herein are substantial and not conclusory as Defs. allege.

Pltff BI does cited the paid contracts between the Defs. The application, evaluation, orientation, referral, that support factually suing Def. Commonpoint even as the act of abuse occurred at the Chazaq location during work all Defs. CONTRACTUALLY supervised and controlled.

There is detailed elaboration herein, that with these taxpayer paid contracts that Pltff BI in performing clerical work at the Chazaq site was performing work for the regular SYEP of infants contractual business of Def. Commonpoint a single joint employer, and or subsidiary employer of the Inf. Pltff with all the Defs.

The facts of this case with the taxpayer paid contracts with Defs. Sshow that Defs. including

Common. as a joint employer, subsidiary employer, single employer and should be liable for the employment related claims against Def. Commonpoint and the City of N.Y.,

See the arguments, supra, in opposition to the Def. motion stated above applicable to Def. Commonpoint also.

ELEVEN:

THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE THIRD PARTY CONTRACT CLAIMS

The words of the contracts between the Defendants “”no part of the contract create any contract relationship between the (NYC) Dept. Youth and Community Development Sponsor or participant” are not be binding upon the Pltff. Infant upon an examination of the facts herein.

## CONCLUSION

As Plaintiff argues in total, supra, in opposition IN ENTIRETY, to Defs. Motion, the MOTIONS TO DISMISS SHOULD BE DENIED, as to each and every argument, noting the Def. NYC Memo that supports Plaintiff BI opposition to the Def. Commonpoint Motion.

Dated

Jan. 25, 2022

S/ MARTIN DRUYAN ESQ.

MARTIN DRUYAN AND ASSOCIATES

ATTORNEYS

Attorney for Plaintiff