UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                     :
B.I. AN INFANT UNDER THE AGE OF 18                                   :
YEARS, BY HIS NATURAL FATHER, ARTHUR                                 :
ISKHAKOV,                                                            :
                                                                     :
                                                                     :
            Plaintiff,                                               :
                                                                     :         **MEMORANDUM**
        -against-                                                    :         **AND ORDER**
                                                                     :
CHAZAQ ORGANIZATION USA INC; STEVEN                                  :         20-CV-1910 (PK)
SAPHIRSTEIN; COMMONPOINT QUEENS                                      :
(a/k/a QUEENS CENTRAL Y); NEW YORK CITY                              :
AGENCY OF YOUTH AND COMMUNITY                                        :
DEVELOPMENT; CITY OF NEW YORK,                                       :
                                                                     :
            Defendants.                                              :
                                                                     :
------------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

Arthur Iskhakov ("Plaintiff"), on behalf of his minor son B.I., brought this action against

Chazaq Organization USA Inc ("Chazaq"), Steven Saphirstein ("Saphirstein"), Commonpoint Queens

(a/k/a Queens Central Y) ("Commonpoint"), and the City of New York ("City") (collectively,

"Defendants") in relation to an incident that purportedly occurred while B.I. was participating in a

Summer Youth Employment Program ("SYEP") administered by the New York City Department of

Youth and Community Development ("DYCD").[1] (Second Amended Complaint ("SAC"),[2] Dkt. 49.)

Plaintiff asserts violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-107 *et seq.*; the Workforce

---

[1] The Court granted Plaintiff's oral request to dismiss claims against DYCD as an improper party.  (Oct. 19, 2021 Minute Entry.)

[2] Although Plaintiff has termed the SAC the "Second" Amended Complaint, it is actually the third amended version of the Complaint.  (*See* Amended Complaint dated March 23, 2021, Dkt. 27; Amended Complaint dated May 31, 2021, Dkt. 32; SAC dated October 22, 2021, Dkt. 49.)  "SAC" is used herein solely for consistency with Plaintiff's terminology.

Investment Act ("WIA"), 29 U.S.C. §§ 2801-2945[3]; New York State Executive Order No. 19, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 9, § 4.19; and Section 201-g of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 201-g.  In addition, Plaintiff asserts New York State common law claims for assault, battery, negligence, sexual assault, tort, unlawful touching, and failure to supervise. Plaintiff also states an unspecified claim for retaliation.[4]

Before the Court are Motions to Dismiss for Failure to State a Claim filed by the City (Dkt. 51) and by Commonpoint (Dkt. 54; collectively with Dkt. 51, the "Motions"; *see also* "City Mem.," Dkt. 52; "Commonpoint Mem.," Dkt. 55-1; "Pl. Opp.," Dkt. 59).   For the reasons stated herein, the Motions are granted.

## FACTUAL BACKGROUND

The SAC incorporates by reference "facts and documents" that the City disclosed "on about Sept. 2021 and Oct. 2021."  (SAC at 1 (ECF pagination).)[5]  These documents were attached to the Declaration of Carolyn E. Kruk submitted by the City in support of its Motion.  ("Kruk Decl.," Dkt. 53.)  They consist of an email dated September 15, 2021 from Carolyn E. Kruk, the City's former counsel, to Plaintiff's Counsel in anticipation of the SAC.  (Ex. A. to Kruk Decl., Dkt. 53-1); the contract between DYCD and Commonpoint ("City-Commonpoint Contract," Ex. B to Kruk Decl., Dkt. 53-2); B.I.'s Participant Application (Ex. C to Kruk Decl., Dkt. 53-3); and Chazaq's Worksite Handbook ("SYEP Handbook," Ex. D. to Kruk Decl., Dkt. 53-4).   The Court considers these documents in addition to the SAC and its attachments.  *See Chambers v. Time Warner*, Inc., 282 F.3d

---

[3] The WIA was amended in 2014 and is now the Workforce Innovation and Opportunity Act ("WIOA"). Workforce Innovation and Opportunity Act, H.R. 803, 113th Cong. (2014).

[4] Despite citation to other statutes throughout the SAC, Plaintiff clarified during oral argument that these are the only causes of action alleged.  Specifically, Plaintiff is not alleging a cause of action under Title IX, the NYSHRL, or 42 U.S.C. § 1981.  (*See* Sept. 19, 2022 Oral Argument Transcript ("Tr.") 32:17-19, 33:5-13, 33:19-34:9, 61:6-9.)

[5] Paragraph numbers are inconsistently applied throughout the SAC, so all references are to the ECF pagination.

147, 152-53 (2d Cir. 2002) ("For purposes of [the 12(b) motion], 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (alteration in original) (citation omitted)); *id.* at 153 ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting *Int'l Audiotext*, 62 F.3d at 72)). Moreover, the parties do not dispute the authenticity, accuracy, or relevancy of these documents. *See Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *3 n.7 (E.D.N.Y. Sep. 21, 2015) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

For the purposes of the Motions only, the facts alleged or incorporated by reference in the SAC are accepted as true. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 306-07 (2d Cir. 2015).

## I.    Summer Youth Employment Program

DYCD administers SYEP, a youth employment program in which the City contracts with community-based organizations ("SYEP providers") to place young people ages 16 through 24 at various worksites for the summer. (SAC at 4-5.) The purpose of the program is to help youth "acquire skills leading to greater employability" and to "foster[] civic engagement." (SAC at 5; Ex. A to Kruk Decl.)

Commonpoint is a SYEP provider that contracted with DYCD. (SAC at 5.) During the period in question, Commonpoint was responsible for providing program services "directly or through approved subcontractors" in accordance with DYCD's stated objectives. (City-Commonpoint Contract at 000127 (Bates stamp pagination).) Commonpoint solicited applications from prospective youth participants, whose applications were then entered into a lottery run by DYCD. (City-Commonpoint Contract at 000129.)

Once DYCD notified Commonpoint regarding successful applicants, Commonpoint was "responsible for connecting youth . . . with employers (which SYEP calls 'Worksites') throughout New York City." (Ex. A to Kruk Decl. at 1 (ECF pagination); *see also* City-Commonpoint Contract at 000131.) Commonpoint was required to "assess each participant to determine their work-related interests and skills and make efforts to match them with a job that will complement these interests and skills." (Ex. A to Kruk Decl. at 1); *see also* SYEP Handbook at 000201 (Bates stamp pagination).)

In 2019, Commonpoint contracted with Chazaq, a non-profit educational service based in Queens, for Chazaq to serve as a SYEP worksite pursuant to a worksite application. (SAC at 2, 5; "Chazaq Worksite Application," Ex. 1 to SAC, Dkt. 49-1.)

SYEP participants assigned to Chazaq were placed at Chazaq's office and given the job title "Clerical Aide/Office Assistant." (Chazaq Worksite Application at 2.) Participants' duties included answering phones, making copies, faxing, scheduling appointments, and signing in customers. (Chazaq Worksite Application at 2.) Chazaq requested participants who could speak English, Hebrew, and Russian and who could type and make phone calls. (Chazaq Worksite Application at 2.) Participants' hours were Monday through Thursday from 10:00 a.m. to 5:00 p.m. and Friday from 9:00 a.m. to 3:00 p.m. ("Worksite Pre-Assessment Report 2019," Ex. 2 to SAC at 3, Dkt. 49-2.)

Plaintiff alleges that the City, Commonpoint, and Chazaq "jointly and individually determined the work site, and work details and assignment of Plaintiff Infant [B.I.] in the SYEP program," controlled "the means . . . by which SYEP . . . work was accomplished," determined the skills required to participate in the program, and chose the worksite location. (SAC at 4, 12.) Each Defendant "ha[d] the right to assign additional projects" to participants, and to determine their hours and days off. (SAC at 13.) Plaintiff further alleges that all Defendants "alone and together controlled the discipline[,] pay, insurance if any, records, and supervision of the SYEP program; [and] the interrelation of management . . . ." (SAC at 10.) Plaintiff alleges there was "centralized control of labor relations"

4

(SAC at 11), and "[c]ommon financial control/ownership [of] [t]he SYEP and Worksite contracts."
(SAC at 11.)  Plaintiff states that "[t]he work of summer interns, the SYEP, was the regular business
of each of the [Defendants]" and that Defendants' contracts determined employee benefits.  (SAC at
13.)

## II.    The City-Commonpoint Contract

Pursuant to the City-Commonpoint Contract, Commonpoint was to provide participants with
job descriptions that outlined the tasks they were expected to perform.  (City-Commonpoint Contract
at 000131.)  Additionally, Commonpoint was responsible for providing participants with at least eight
hours of training.  (City-Commonpoint Contract at 000130.)

Commonpoint staff members were required to "visit each Worksite at least once per week . . .
provide all SYEP participants with sexual harassment prevention training . . . [and] pick up the
timesheets from the Worksite on a weekly basis."  (Ex. A to Kruk Decl. at 1); *see* City-Commonpoint
Contract at 000131.)  DYCD had the authority to visit worksites unannounced.  (SYEP Handbook at
000203.)  "All Participant Work Assignments w[ere] subject to DYCD approval."  (City-Commonpoint
Contract at 000131.)

Additionally, the worksite was responsible for maintaining participants' timesheets, and
Commonpoint was to "monitor, record, verify, and report Participants' hours worked."  (City-
Commonpoint Contract at 000132.)  DYCD was permitted to alter the required number of work
hours.  (City-Commonpoint Contract at 000132.)  Commonpoint was required to solicit feedback
from participants throughout the program period.  (City-Commonpoint Contract at 000131.)

The City-Commonpoint Contract states that "[n]othing contained in any such referral
agreement, or in this Agreement, shall create any contractual relationship between DYCD and the
entity with whom [Commonpoint] has entered into a referral agreement" (City-Commonpoint
Contract at 000132), and "[n]othing contained in either the Worksite Application or the Participant

Worksite Referral shall impair DYCD's rights under this Agreement, relieve [Commonpoint] of any responsibility under the Agreement, or create any contractual relationship between DYCD and the Worksite Sponsor or Participant."  (City-Commonpoint Contract at 000135.)

## III.    The Commonpoint-Chazaq Contract

The contract between Commonpoint and Chazaq took the form of the Chazaq Worksite Application (*see* Chazaq Worksite Application at 1 (ECF pagination)), "coupled with the Worksite Certification and Assurances."  (*See* Ex. A to Kruk Decl. at 1; 2019 Worksite Assurance and Certification Agreement ("Chazaq Worksite Assurance") at 4 (ECF pagination), Ex. 3 to SAC, Dkt. 49-2.)

Chazaq was responsible for implementing the SYEP program as described in the Chazaq Worksite Application and the SYEP Handbook and "in compliance with all applicable provisions of the Federal Government, New York State . . . Labor Law and The City of New York . . . Department of Youth & Community Development."  (Chazaq Worksite Assurance at 4.)  Chazaq agreed to "provide supervision in the appropriate ratio to all Participants assigned to [its] Worksite at all times," "account for and certify Participants' time and attendance," and "ensure that the hours reported reflect the actual hours worked."  (Chazaq Worksite Assurance at 4.)

Chazaq was not permitted to send a participant home or terminate him without Commonpoint's approval.  (SYEP Handbook at 000207.)

## IV.    B.I.'s Participation in SYEP

During the summer of 2019, B.I., a teenager, applied to participate in the SYEP.  (SAC at 4.) After a qualifying interview, B.I. was accepted into the program and referred to Commonpoint.  (SAC at 4.)  Commonpoint placed B.I. at Chazaq for his summer employment.  (SAC at 3, 5.)  While working for Chazaq, B.I. received monetary payments from the City through debit card transactions.  (SAC at 4.)  B.I. also gained work experience and skills helpful for future employment.  (SAC at 4.)

Defendant Saphirstein was an employee of Chazaq and supervised B.I. (SAC at 3.) The SAC alleges that Saphirstein was "authorized and employed as a youth employee supervisor, volunteer, agent, independent contractor, worker, intern, at Chazaq, Commonpoint, or both, where he supervised . . . B.I. in said capacities." (SAC at 16.)

On or about July 9, 2019, Saphirstein assigned B.I. to do work that involved accessing boxes in Saphirstein's car. (SAC at 6, 16-17.) While in Saphirstein's car, Saphirstein touched B.I. without his consent on his shoulder and stomach and attempted to touch B.I.'s genitals over his clothing. (SAC at 17.) B.I. was "able to push Saphirstein's hand away each time." (SAC at 17.) B.I. told Saphirstein to "stop touching" him, and Saphirstein responded with sexual profanity. (SAC at 17.)

The incident was reported to the New York City Police Department, and Saphirstein was arrested. (SAC at 17.)

Sometime in 2019 or 2020, in violation of a Criminal Court order of protection, Saphirstein visited Yeshiva High School, where B.I. was a student. (SAC at 17.) While at the school, Saphirstein videotaped B.I. and "glared at and intimidated" him. (SAC at 17.) B.I. was upset by the visit. (SAC at 17.) B.I. was "eventually expelled from the Yeshiva without counseling, or therapy, impairing his religion practices . . . ." (SAC at 18.) Prior to Saphirstein's visit, B.I. was an "excellent student . . . without scholastic or disciplinary issues." (SAC at 18.) As a result of these incidents, B.I. had to attend therapy and take medication; he continues to feel physically and mentally distressed and suffers from permanent injury. (SAC at 18.)

## PROCEDURAL BACKGROUND

Plaintiff obtained a "right to sue" letter from the U.S. Equal Employment Opportunity Commission ("EEOC") as to Chazaq on April 22, 2020. (SAC at 2.) He obtained a second "right to sue" letter as to Commonpoint and the City on March 8, 2021. (SAC at 2.) Plaintiff filed the Complaint on April 25, 2020 (Dkt. 1), an Amended Complaint on March 23, 2021 (Dkt. 27), another

Amended Complaint on May 31, 2021 (Dkt. 32), and the SAC on October 22, 2021 (Dkt. 49).[6] Commonpoint was not included as a party until Plaintiff filed the March 23, 2021 Amended Complaint and the City was not included as a party until Plaintiff filed the May 31, 2021 Amended Complaint.

The SAC alleges five causes of action against Defendants: that (1) Defendants sexually harassed B.I. in violation of Title VII (SAC at 18-19); (2) Defendants sexually harassed B.I. and failed to prevent his assault in violation of the NYCHRL (SAC at 19-20); (3) Defendants failed to prevent the sexual assault on B.I. in violation of the WIOA, Executive Order No. 19, and Section 201-g of the NYLL (SAC at 19); (4) Defendants committed assault, battery, negligence, prime facie tort, sexual assault, unlawful touching, and failure to supervise in violation of New York State common law (SAC at 20); and (5) Defendants retaliated against B.I. for filing a police report against Saphirstein. (SAC at 20-21.)

Saphirstein has not filed an answer or otherwise responded to the SAC.

On December 13, 2021, Defendant City filed its Motion to Dismiss (Dkt. 51), and on December 16, 2021, Defendant Commonpoint filed its Motion to Dismiss. (Dkt. 54.) Both the City and Commonpoint moved to dismiss the SAC in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff filed a single opposition to both Motions on January 25, 2022. (Pl. Opp.) Commonpoint filed its Reply on February 11, 2022. ("Commonpoint Reply," Dkt. 61.) The City filed its Reply on March 11, 2022. ("City Reply," Dkt. 63.)

Although Chazaq was initially named as a defendant in the SAC, Plaintiff and Chazaq reached a settlement agreement and on March 19, 2022, Plaintiff filed a stipulation of discontinuance against Chazaq. (Stip. of Discontinuance, Dkt. 64; Pl. Opp. at 2 (ECF pagination).)

---

[6] *See* n.2, *supra.*

Oral argument on the Motions was held on September 19, 2022.  (*See* Sept. 19, 2022 Minute Entry; Tr.)

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306.  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The complaint must "at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotations omitted).  A plaintiff must plead "facts to give 'plausible support'" to his "'minimal' initial burden" to withstand a motion to dismiss. *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *5 (E.D.N.Y. Sept. 21, 2015) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

## DISCUSSION

### I.  Title VII Claims

Plaintiff's first cause of action is for "unlawful sex harassment" under Title VII.  (SAC at 18-19.)  Title VII requires a claimant who desires to bring a suit in federal court to file a complaint with the EEOC within 180 days of an incident.[7]  42 U.S.C. 2000e-5(e); *see, e.g.*, *Dollinger v. State Ins. Fund*, 44

---

[7] If the claimant initially instituted proceedings with a state or local agency with authority to grant or seek relief (or if the claimant has instituted criminal proceedings), it has 300 days to file a claim with the EEOC.  Plaintiff does not state that he instituted any such proceedings.

F. Supp. 2d 467, 474 (N.D.N.Y. 1999). Here, the incident giving rise to the claim occurred on July 9, 2019, thus requiring Plaintiff to file a claim with the EEOC by January 6, 2020. It is undisputed that Plaintiff did not obtain a "right to sue" letter as to Commonpoint and the City until March 8, 2021.[8] (SAC at 2; Tr, at 13:1-14.)

Commonpoint argues that Plaintiff's Title VII claims are time-barred because he failed to file a claim with the EEOC or obtain a "right to sue" letter within the deadline. (Commonpoint Mem. at 7 (ECF pagination).) Plaintiff contends that he did not file a claim with the EEOC or obtain a "right to sue" letter sooner because he did not become aware that Commonpoint was a relevant party until much later. (*See* Pl. Opp. at 16.) Although equitable estoppel could cause Plaintiff's claim to be timely, there is no ground upon which to find that equitable estoppel applies. "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)), *as amended* (July 29, 2003). It is incumbent upon the party seeking equitable tolling to show these factors. *See, e.g.*, *Grys v. ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014). Plaintiff's failure to become aware that Commonpoint is a relevant party is not an "extraordinary" circumstance. B.I.'s counsel argues he did not realize that Commonpoint was a party because of "secretive wrongdoing." (Pl. Opp. at 16.) However, he fails to specify how Commonpoint's involvement was concealed from him. Instead, he

---

[8] Although a Title VII plaintiff's failure to name a defendant in an underlying EEOC complaint may be forgiven if four factors are considered and deemed satisfied, *Johnson v. Palma*, 931 F.2d 203, 209-10 (2d Cir. 1991), Plaintiff has failed to argue that any of these four factors weigh in Plaintiff's favor. "Undeveloped arguments are waived because 'it is not the obligation of the court to research and construct legal arguments open to parties.'" *Abdou v. Walker*, No. 19-CV-1824 (PAE), 2022 WL 3334700, at *3 (S.D.N.Y. Aug. 12, 2022) (quoting *Nat'l Fair Hous. All. V. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 34 n.4 (D.D.C. 2017)).

argues only that Commonpoint failed to disclose its "employer relationship" with B.I. and that the SYEP program was too "complex" and "Byzantine" to otherwise unravel. *Cf. Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 666 (E.D.N.Y. 2015) (finding that where plaintiff who claimed to have been misled by a third party as to the applicable deadline failed to explain *how* he was misled, plaintiff's claims were not equitably tolled). Commonpoint denies that B.I. was ever its employee, and there is no indication that it purposefully misled Plaintiff in any respect. Although courts have recognized equitable tolling of the statute of limitations in rare circumstances, including when a plaintiff "is actively misled by his employer" or "is prevented in some extraordinary way from exercising his rights," *Siegel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 89-CV-8188 (PKL), 2000 WL 1211581, at *3 (S.D.N.Y. Aug. 25, 2000), Plaintiff has failed to plead grounds for equitable tolling of his claims against Commonpoint.

Plaintiff also argues that his Title VII claims should be permitted to proceed because, although there is no applicable tolling provision for Title VII claims brought by infants, the Court should apply tolling provisions found in N.Y. C.P.L.R. § 208 (permitting infants to bring claims any time before they reach adulthood) and recognize Plaintiff's claim as timely because it was brought before his eighteenth birthday. (Dkt. 71 ¶¶ 2-10.) In support of this argument, Plaintiff notes that New York policy has trended in recent years toward protecting the rights of infants who have suffered from sexual abuse and human trafficking-related wrongs. (*Id.* ¶ 8.) Plaintiff fails to show how state law principles, policies, and provisions apply to salvage a late-filed federal claim.

Finally, Plaintiff argues that Public Law No. 117-176, which amends Section 2255 of Title 18 of the United States Code to eliminate any statute of limitations for claims of sexual abuse against minors, should be applied retroactively in his case. (Dkt. 71 ¶¶ 11-12.) *See* Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022, Pub. L. No. 117-176, 136 Stat. 2108 (2022). However, this amendment only applies to specific statutory provisions that prohibit certain conduct

with respect to minors, and Plaintiff does not state any basis for applying the amendment to Title VII claims. Moreover, Section 3 of the amendment states that the act applies only to "any claim or action arising after the date of enactment of this Act." *Id.* § 3. The amendment was enacted on September 16, 2022, well after Plaintiff's Title VII claims arose in July 2019, and the "right to sue" letters as to Commonpoint and the City were issued on March 8, 2021. *Wegmann v. Young Adult Inst., Inc.*, No. 15-CV-3815 (KPF), 2018 WL 3910820, at *14 (S.D.N.Y. Aug. 14, 2018) ("Title VII claims accrue when the plaintiff knows or has reason to know of the injury that forms the basis of her complaint."), *aff'd*, 2021 WL 3573753 (2d Cir. Aug. 13, 2021) (summary order).

While the City did not argue that B.I.'s Title VII claim was time-barred in its motion to dismiss, the Court is nonetheless able to grant the motion on grounds not raised by a party after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f). Plaintiff was provided with notice and time to respond. (*See* June 1, 2024 Order; Plaintiff's Response, Dkt. 71.) As explained above, Plaintiff has failed to establish that the Title VII claim is not time-barred. Plaintiff's Title VII claim, therefore, is dismissed as to both Commonpoint and the City.

## II. NYCHRL Claims

The SAC alleges that the City and Commonpoint are liable for sexual harassment and failure to supervise or prevent sexual harassment pursuant to Section § 8-107 of the NYCHRL.

### A. Legal Standard under the NYCHRL

The NYCHRL prohibits "an employer or an employee or agent thereof" from discriminating against an employee on the basis of the employee's actual or perceived gender. N.Y.C. Admin Code § 8-107(1). It includes a provision making it unlawful for "an employer, labor organization, employment agency or any joint labor-management committee controlling apprentice training programs or an employee or agent thereof" to discriminate against a person based on the person's actual or perceived gender. N.Y.C. Admin Code § 8-107(2). Gender discrimination includes sexual

harassment under the NYCHRL. *O'Neil v. Roman Cath. Diocese of Brooklyn*, 98 A.D.3d 485, 487 (2d Dep't 2012).

Courts recognize two theories of sexual harassment under the NYCHRL: quid pro quo harassment and hostile work environment. *Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp. 3d 173, 181-82 (S.D.N.Y. 2023) (collecting cases). Because Plaintiff includes no allegations to support a theory of quid pro quo harassment, the Court considers Plaintiff's NYCHRL sexual harassment claim against the City and Commonpoint as one for hostile work environment.

A plaintiff alleging a hostile work environment theory of sexual harassment under the NYCHRL must show that "she has been treated less well than other employees because of her gender," or put differently, faced "unwanted gender-based conduct." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks and citation omitted). Claims under the NYCHRL must be considered independently from any federal and state law claims and construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* at 109 (quoting *Albunio v. City of New York*, 947 N.E.2d 135 (N.Y. 2011) (cleaned up).

### B. Whether the City and Commonpoint May Be Liable for Saphirstein's Conduct

Plaintiff's NYCHRL claims against the City and Commonpoint are based solely on Saphirstein's conduct. (SAC at 19-20.)

#### 1. Employee Relationship

The NYCHRL imposes liability on an employer for the actions of an employee or agent where (1) the "employee or agent exercised managerial or supervisory responsibility," (2) the "employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action," or (3) the "employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent

such discriminatory conduct." N.Y.C. Admin. Code § 8-107(13)(b); *Leroy v. Delta Air Lines, Inc.*, 36 F.4th 469, 475 (2d Cir. 2022), *as amended*, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) (amended summary order).

To determine whether the City and Commonpoint may be liable for Saphirstein's conduct under the NYCHRL, the Court must first determine whether Plaintiff has plausibly alleged that an employment or agency relationship existed between Saphirstein and the City or Commonpoint. *Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16-CV-4779, 2017 WL 2345658, at *4 n.3 (E.D.N.Y. May 30, 2017) (explaining that "the employment relationship relevant to the section 8-107(13) claim" is relationship between purported employer and employee who engaged in discriminatory conduct at issue). To determine whether a defendant is an employer for purposes of NYCHRL § 8-107(13), courts examine whether the purported employer: "(1) had the power of the selection and engagement of the employee; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct." *Id.* at *4 n.2.

In addition, courts may "find a *joint* employer relationship when two or more entities, according to common law principles, share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (emphasis in original) (collecting cases). In determining whether a joint employer relationship exists, "the exercise of control is the guiding indicator," such as the "power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities." *Id.* at 844.

"Under New York law, 'an agency relationship exists . . . when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent."[9] *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 377 (S.D.N.Y. 2013).

---

[9] Because the NYCHRL does not define the term "agent," the Court applies common law principles. *White*, 973 F. Supp. 2d at 377.

The SAC contains no allegation that Saphirstein received any salary from the City or Commonpoint, or that they had the power to hire, fire, or control him. Nor do the documents incorporated into the SAC by reference indicate such a relationship. Thus, the SAC fails to plausibly allege that Saphirstein was an employee of the City or Commonpoint for purposes of NYCHRL § 8-107(13).

Likewise, the SAC does not allege any facts demonstrating that the City or Commonpoint exercised control over Saphirstein's salary, hiring process, or daily employment activities such that the City or Commonpoint may qualify as his joint employer with Chazaq. The SAC also fails to allege any facts indicating that Saphirstein agreed to act for the City or Commonpoint as their agent, or that they retained any control over Saphirstein.

Although the SAC alleges that the City and Commonpoint controlled B.I.'s daily activities, it is silent as to their control, if any, over Saphirstein. Moreover, the documents incorporated into the SAC by reference do not support the existence of any control by the City or Commonpoint over Saphirstein. At most, the SAC alleges that "Defendant Sapherstein [sic] was authorized and employed as a youth employee supervisor, volunteer, agent, independent contractor, worker, intern, at Chazaq, Commonpoint, or both, where he supervised Plaintiff B.I. in said capacities." (SAC at 16.) Such a conclusory statement does not plausibly allege that Commonpoint was Saphirstein's joint employer, or that he was its agent. *See Yeremis v. Charter Commc'ns Inc.*, No. 20-CV-4723 (GHW), 2021 WL 5910396, at *5-6 (S.D.N.Y. Dec. 13, 2021) (finding no joint employer relationship where plaintiff made no allegations about "shared hiring process," "control over his hours, pay, insurance, records, or discipline," and did not describe any supervision by purported joint employer over him); *White*, 973 F. Supp. 2d at 377 (finding no agency relationship where plaintiff proffered no evidence showing any indicia of control or authority to act on behalf of purported principal).

The SAC contains no allegation regarding Saphirstein's employment relationship with the City.

Accordingly, Plaintiff has failed to plausibly allege that the City or Commonpoint may be liable under the NYCHRL as Saphirstein's employer or principal.

### 2. Non-Employee Relationship

With regard to whether a non-employee's conduct may be imputed to the plaintiff's employer under the NYCHRL, the Second Circuit noted that "[n]o decision of the New York Court of Appeals has held an employer liable under the NYCHRL for the conduct of a non-employee, and the text of the NYCHRL does not appear to impose such liability." *Leroy*, 36 F.4th at 475 n.2. However, "because the NYCHRL treats Title VII as 'a floor below which the NYCHRL cannot fall,'" the Second Circuit "assume[d] . . . that [the NYCHRL] includes the liability [the Second Circuit] identified in *Summa*," *i.e.*, that "the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits or facilitates that non-employee's discrimination." *Id.* at n.4. In *Summa*, the Second Circuit explained that an "employer will be held liable only for its own negligence, and the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment [by the non-employee] yet failed to take appropriate remedial action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (internal quotation marks omitted).

For the reasons discussed above, the SAC does not plausibly allege that the City or Commonpoint exercised any control over Saphirstein's behavior. Moreover, the SAC is silent as to how the City and Commonpoint acted negligently to permit or facilitate Saphirstein's discriminatory conduct. It fails to allege how Commonpoint or the City were put on notice of any of Saphirstein's prior behavior such that they could have acted to prevent the conduct against B.I. from occurring, much less permit it. Plaintiff also makes no allegation that the City or Commonpoint failed to timely

16

and appropriately address Plaintiff's complaints.  *See Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 320-21 (S.D.N.Y. 2022).

Accordingly, because the SAC has failed to plausibly allege that the City or Commonpoint are Saphirstein's employer or principal, or that they exercised a "high degree of control" over him, there is no basis under the NYCHRL for holding the City or Commonpoint liable for Saphirstein's alleged harassment of B.I.  Plaintiff's NYCHRL claims are, therefore, dismissed.

## III.    WIOA, Executive Order No. 19, and NYLL Claims

Plaintiff alleges that Defendants failed to prevent the sexual harassment of B.I. and failed to supervise and educate their employees in violation of the WIOA (formerly WIA), Executive Order No. 19, and Section 201-g of the NYLL.  (SAC at 19.)  Specifically, Plaintiff alleges that Defendants did not have "seminars, lessons and posters, paper handouts, courses and materials, discussions, programs" to prevent sexual harassment and assault (SAC at 16), and that they owed B.I. a "duty of supervision and safety" which they breached by failing to prevent Saphirstein from assaulting B.I. (SAC at 5.)  Plaintiff also alleges that Defendants failed to prevent Saphirstein from assigning B.I. to work at an "unauthorized work location, the private automobile of . . . Saphirstein, where the opportunity for the sex abuse that occurred herein . . . ."  (SAC at 7.)

### A.  The WIOA

The WIOA "gives federal funding to states to provide education and training services to help people improve their employment prospects."  *Workforce Dev. Area of Nw. v. Puerto Rico*, No. 19-CV-1621 (SCC), 2021 WL 5285448, at *1 (D.P.R. Nov. 12, 2021).  In addition, it "prohibits discrimination against individual participants based on protected characteristics, and tasks the Secretary with either referring the matter to the Attorney General for a civil action, or taking 'such other action as may be provided by law.'"  *Coastal Ctys. Workforce, Inc. v. LePage*, 284 F. Supp. 3d 32, 53 (D. Me. 2018) (quoting 29 U.S.C. § 3248(b)-(c)).  However, the WIOA does not provide a private right of action for plaintiffs

to sue for violation of the statute's non-discrimination provision. *Id.* at 47 (noting that WIOA is Spending Clause legislation, and that "the typical remedy for state noncompliance with federally imposed conditions in spending legislation is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State") (alteration removed).

Because there is no private cause of action for violation of the WIOA, Plaintiff's WIOA claim is dismissed.

### B. Executive Order No. 19

Executive Order No. 19 "establishes the State's policy on sexual harassment in the workplace . . . ." *Oare v. Coughlin*, 133 A.D.2d 943, 944 (3rd Dep't 1987) (citing 9 NYCRR § 4.19).

"Executive Order No. 19 require[s] federally-funded educational institutions to do no more than designate an employee as an [Affirmative Action Officer] who is to receive complaints and to disseminate contact information to students." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 755 (2d Cir. 2003). It does not provide a private right of action to plaintiffs who allege that a federally-funded institution did not implement sexual harassment prevention policies.

The Second Circuit has noted that there is no independent cause of action for ministerial neglect pursuant to Executive Order No. 19. *Id.* Plaintiff identifies no provision of law creating such a cause of action or any case that has recognized one.

Accordingly, Plaintiff's claim pursuant to Executive Order No. 19 is dismissed.

### C. Section 201-g of the NYLL

Section 201-g of the NYLL requires certain employers to implement sexual harassment prevention training and policies. It does not provide a private right of action for any violation of this provision, and Plaintiff has not identified any source for one.

Accordingly, the Court finds no basis for Plaintiff's NYLL claim under this section, and the claim is dismissed.

IV.     **New York State Common Law Claims**

Plaintiff brings various claims under New York common law, specifically, assault, battery, sexual assault, tort, unlawful touching, and negligence and failure to supervise.

### A.  *Plaintiff's Assault, Battery, Sexual Assault, Tort, and Unlawful Touching Claims*

Under New York law, an employer "may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment" under the principle of *respondeat superior*. *A.W. by E.W. v. N.Y. Dept. of Educ.*, 702 F. Supp. 3d 46, 52 (E.D.N.Y. 2023) (quoting *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019)). This "applies both to intentional torts and to negligence." *Id.*

As discussed *supra*, the SAC fails to allege sufficient facts to show that the City and Commonpoint were Saphirstein's employers. Accordingly, the City and Commonpoint cannot be held vicariously liable for Saphirstein's torts of assault, battery, sexual assault, tort, and unlawful touching.

Even assuming, *arguendo*, that Plaintiff had sufficiently alleged that Commonpoint or the City were Saphirstein's employers, "[t]o state [a] claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014). "An employer will not be held liable under [the doctrine of respondeat superior] for actions which were not taken in furtherance of the employer's interests and which were undertaken by the employee for wholly personal motives." *Id.* (quoting *Galvani v. Nassau Cnty. Police Indemnification Review Bd.*, 242 A.D.2d 64 (2d Dep't 1998) (citation omitted)).

"New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within

the employment context." *Id.* "The doctrine of respondeat superior is not applicable in cases involving sex discrimination unless the complaint alleges that the employer had knowledge or acquiesced in the discriminatory conduct of a supervisor or co-worker." *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 530 (S.D.N.Y. 1998) (quoting *Vanscoy v. Namic USA Corp.*, 234 A.D.2d 680, 682 (3d Dep't 1996) (internal quotation marks omitted)); *see also Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 447-48 (E.D.N.Y. 2009) ("For an intentional tort to be considered within the scope of employment, . . . it must in some broad sense further the employer's business."). Additionally, the District Court in *Alsaud* noted that there were no New York court decisions "in which the doctrine of respondeat superior was held to apply to sexual assault." 12 F. Supp. 3d at 677; *see also Reid v. City of New York*, No. 20-CV-3926 (PK), 2024 WL 5239204, at *6 (E.D.N.Y. Dec. 27, 2024) (noting that "New York courts have consistently held that sexual assault and sexual misconduct do not further employers' business and are not within the scope of employment") (collecting cases).

Plaintiff does not allege that the City or Commonpoint "had knowledge or acquiesced in" Saphirstein's sexual assault of B.I. *Ross*, 2 F. Supp. 2d at 530. Moreover, he fails to allege that Saphirstein's harassment of B.I. furthered the interests of the City or Commonpoint. *Alsaud*, F. Supp. 3d at 677.

Accordingly, Plaintiff's common law claims for assault, battery, sexual assault, tort, and unlawful touching against the City and Commonpoint are dismissed.

### B. Negligence and Failure to Supervise

Plaintiff alleges claims for negligence and failure to supervise under New York common law. (SAC at 20.) Plaintiff's vague claim of negligence makes no reference to its source of law. "Under New York law, violation of a statute will constitute negligence *per se* where the statute imposes a specific duty." *Cheeseboro v. Little Richie Bus. Serv., Inc.*, 254 F. Supp. 3d 485, 490-91 (E.D.N.Y. 2017). Plaintiff has not identified any statute or regulation that imposes a specific duty on Defendants under

New York law, nor does he allege any cognizable duty of care that the City or Commonpoint owed him. *See King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) ("To sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach.").

The Court construes Plaintiff's claim for failure to supervise as a claim for negligent supervision. *See, e.g.*, *Dilworth v. Goldberg*, No. 10-CV-2224(RJH)(GWG), 2011 WL 3501869, at *27 (S.D.N.Y. July 28, 2011) (interchangeably referring to claim of negligent supervision as claim for failure to supervise).

A claim for negligent supervision requires, "in addition to the standard elements of negligence . . . (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted). As previously discussed, Plaintiff fails to sufficiently allege that the City or Commonpoint were Saphirstein's employers. In addition, the SAC contains no allegations that Commonpoint or the City "knew or should have known of [Saphirstein]'s propensity for the conduct" that caused B.I.'s injury or that Saphirstein's actions occurred on Commonpoint or the City's premises. *Id.*

Accordingly, Plaintiff's claims for negligence and failure to supervise against the City and Commonpoint are dismissed.

## V.    Retaliation

Plaintiff's final cause of action alleges retaliation generally without specifying any statutory or other bases. *See Sunbear Systems v. Schaffhauser*, No. 98-CV-1500 (AGS), 1998 WL 265239, at *2

(S.D.N.Y. May 26, 1998) (granting motion to dismiss where plaintiff failed to identify specific statutes that were allegedly violated).

The SAC alleges that, in response to B.I. filing a police report against Saphirstein in July 2019, Saphirstein went to B.I.'s school around the fall of 2019 to harass and intimidate him, including videotaping B.I. (SAC at 20-21.) The SAC further alleges that Defendants "acted in concert" in harassing B.I., and that "[t]his retaliation continued with [B.I.] being expelled from his high school . . . without counseling or psychological assistance or help in any manner at the time of said expulsion." (SAC at 20.)

However, the SAC contains no facts that plausibly attribute B.I.'s expulsion to the City or Commonpoint. The SAC does not allege who expelled B.I., or that the City or Commonpoint bears any responsibility for that decision. Furthermore, there are no allegations that the City or Commonpoint was connected to B.I.'s school in any respect.

Accordingly, Plaintiff's claim for retaliation is dismissed.

## VI.    Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that once the period to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 states that "[t]he court should freely give leave when justice so requires." *Id.*; *see Pinyuk v. CBE Grp., Inc.*, No. 17-CV-5753 (RRM)(CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019).

Plaintiff has already amended the Complaint three times. Since the record does not show that Plaintiff would be able to amend it in a manner that would survive dismissal, Plaintiff is not granted leave to file yet another amended Complaint. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant City's Motion to Dismiss and Defendant Commonpoint's Motion to Dismiss are granted, and the SAC is dismissed in its entirety, with prejudice, as to the City and Commonpoint.

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 30, 2025